ANNA HUCKLEBERRY, Appellant, v. MISSOURI PACIFIC RAILROAD COMPANY.—26 S. W. (2d) 980.

Division One, April 2, 1930.

*Kelly, Buchholz & O'Donnell* for appellant.

1028

*Thomas J. Cole, Hackney & Welch* and *Grover & Graves* for respondent.

ATWOOD, P. J.—Claud Huckleberry and Anna Huckleberry commenced an action in the Circuit Court of Lafayette County, Missouri, against the Missouri Pacific Railroad Company, for the alleged wrongful death of their unmarried minor son, John' C. Huckleberry. Upon change of venue and stipulation filed the case was transferred to the Circuit Court of Jackson County, Missouri, at Kansas City. Claud Huckleberry died and the action was further prosecuted by the other plaintiff, Anna Huckleberry. At the trial plaintiff suffered an involuntary nonsuit with leave to move to set aside. Her motion to set aside this order and judgment was overruled, and she has appealed.

John C. Huckleberry died of injuries caused by contact with burning vapor from gasoline spilled along defendant's right of way near Dodson, Missouri, July 20, 1921. Plaintiff went to trial on her amended petition alleging that on said date defendant was operating a freight train in an interstate movement over its track about one-half mile southwest of Dodson; that through its carelessness and negligence said train was then and there derailed and wrecked, so that tank cars filled with gasoline were overturned and broken open and their highly explosive and inflammable contents were negligently allowed to saturate and cover the ground and flow along defendant's right of way and become ignited and burn the deceased; that in violation of the terms and provisions of certain regulations ·prescribed by the Interstate Commerce Commission pursuant to the Act of Congress of March 4, 1909, and Section 15 of the Act to Regulate Commerce, and amendments thereto, it negligently failed to cover said spilled gasoline with dry earth or with any other substance before using its engines in the vicinity thereof, or to have said gasoline collected in available vessels or drained into a hole or depression at a safe distance from the track, and negligently permitted, authorized and encouraged the deceased and other persons to go upon the ground where said gasoline was spilled and carry the same away while its engine and steam derrick were working in the vicinity, and negligently brought its said engines and the fire, sparks and flames in and from the same near said leaking and partially empty

gasoline tanks and engaged with said steam derrick and locomotive and chain slings and other appliances in hooking and lifting a box car in the vicinity of the said tracks, thereby causing sudden shocks, jars and friction producing sparks. The petition also alleged that said gasoline threw off a highly inflammable vapor which spread over the vicinity and with the operation of said engines rendered the position of the deceased one of imminent peril, of which defendant had notice, and that defendant violated its humanitarian and common law duties to the deceased, and also created and maintained a nuisance that caused deceased to be injured under the circumstances pleaded.

Defendant's amended answer was a general denial, and the further plea that the deceased was a trespasser, that he had full knowledge and notice of all hazards and danger of injury to himself, that he negligently failed to exercise reasonable care for his own safety and voluntarily assumed all the perils of the situation, and that the regulations set forth in plaintiff's amended petition were not formulated, adopted or promulgated by the Interstate Commerce Commission, or if so said Commission did not have any power or authority so to do, and that said regulations, if formulated, adopted or promulgated by said Commission, were and are unreasonable and not binding on this defendant in regard to the performance of any acts done by the defendant at and prior to the injury of deceased.

At the conclusion of plaintiff's evidence, defendant offered a peremptory instruction in the nature of a demurrer to the evidence, which the court indicated would be sustained, whereupon plaintiff took a nonsuit with leave to move to set same aside, resulting in this appeal as above stated.

Plaintiff's evidence, construed as it should be most favorably to the allegations of her petition, tended to show that about 2:30 o'clock in the afternoon of July 20, 1921, defendant's freight train, which included some gasoline-filled tank cars bound from Osawatomie, Kansas, to Kansas City, Missouri, was wrecked south of Dodson before reaching its destination; that gasoline was spilled from some of the derailed tank cars from that time until about seven o'clock in the evening of the same day; that a considerable stream of this gasoline was permitted to flow from the overturned tank cars during all of this time along a ravine running north on defendant's right of way and about twenty feet west of its tracks, which were laid on a fill about fifteen feet above the bottom of the ravine; that defendant's agents, servants and employees dug trenches and holes along the ravine, but made no effort to cover the gasoline with earth or other substance, and many persons thereupon came on defendant's right of way and in the presence of defendant's foreman, agents, servants and employees, without reproof or hindrance, dipped

up and carried away gasoline as it flowed out of said tank cars and down this ravine and .collected in these open holes and trenches; that the atmosphere in that vicinity became so saturated with gasoline vapor that the fumes were noticeable for a distance of a thousand feet west of the ravine; that about six o'clock the deceased, who was then between sixteen and seventeen years of age, in company with another boy and a man named Elliott, entered upon defendant's right of way and paused while Elliott called to a man, who from his motions was apparently directing defendant's wrecking crew which had just arrived from the north with a locomotive and steam derrick, that a lot of good gasoline was going to waste, and this man replied: "Help yourselves; there is plenty;" that deceased thereupon stood by and watched his companions dip gasoline from an open pool or basin three feet or more in width and six or eight inches deep filled with gasoline in the bottom of the ravine about a car-length south of an overturned tank car; that within a few minutes thereafter defendant's crew, without warning deceased of his peril, started the engines to work, the locomotive being north and the steam derrick about thirty feet south of where deceased and his companions were situated in plain view of defendant's foreman and crew; that while deceased and his companions were still so situated and engaged, and while gasoline was flowing down said ravine and the air in that vicinity was mixed with vapor therefrom, defendant's wrecking crew, apparently in charge of the man who had told deceased and his companions to help themselves to the gasoline, undertook to lift or move one of the disabled cars by means of said locomotive, steam derrick and chains; that one of the engines thereupon gave several puffs emitting sparks and fire, some of which fell into uncovered gasoline and vapor along said ravine a short distance north of the place where deceased and his companions were, and ignited the same, burning John C. Huckleberry so that he died about nine days later. There was expert testimony to the effect that gasoline vapor when mixed with air in certain proportions and ignited is violently explosive, that it is easily ignited by a glowing coal or spark, that it is heavier than air but rises and spreads as it becomes mixed with air, that "one thousand gallons of gasoline might form an explosive mixture for one thousand feet on each side of its source, and possibly fifty feet upwardly." Sections 1946 and 1951 to 1958, both inclusive, of the Regulations of the Interstate Commerce Commission for the Transportation of Explosives and other Dangerous Articles of Freight and Express were introduced in evidence, pertinent provisions of which are as follows:

"1946. In case of a wreck involving a car containing inflammable freight it should be assumed that packages are broken and that

leakage has occurred which may cause fire if lighted lanterns or other flames are taken into or near these cars. . . . Inflammable liquids spilled from broken packages or tank cars should be well covered with dry earth before a lighted lantern, torch or an engine is used in the vicinity. . . .

"1951. . . . Volatile (or combustible) liquids, such as gasoline, naphtha, etc., in large quantity and spread over a large surface will form vapors that will ignite at a considerable distance, depending on the kind and quantity of liquid and the direction and force of the wind. . . .

"1952. When oil cars are leaking all lights or fires near them that can possibly be dispensed with should be extinguished or removed. . . .

"1953. . . . The ash pan and fire box of a locomotive or steam derrick, especially on the side of a wrecked or leaking tank car toward which the wind is blowing, is a source of danger. . . .

"1955. Sudden shocks or jars that might produce sparks or friction should be avoided. . . .

"1956. No unnecessary attempt should be made to transport a damaged tank car from which inflammable liquid is leaking. . . . Keep engines away; also spectators who may be smoking. If wrecked or derailed, and not in a position to obstruct or endanger traffic, it should have its leak stopped as far as possible and be left under guard until another tank car or sufficient vessels can be provided for the transfer of the liquid, which should be transferred by pumping when practicable. . . ."

Appellant claims that the evidence introduced in her behalf made a case for the jury, that the trial court erred in compelling her to take a nonsuit and thereafter refusing to set it aside and grant her a new trial, and that she has a right to recover on any one of the following theories:

"(A) Violation of humanitarian duty to deceased after actual knowledge of his peril.

"(B) Violation of humanitarian duty to deceased after constructive knowledge of his peril.

"(C) Primary negligence of defendant to which the alleged contributory negligence of deceased did not proximately contribute.

"(D) Defendant's criminal acts in violating the regulations prescribed by the Interstate Commerce Commission.

"(E) Nuisance."

First, as to sufficiency of the evidence under the humanitarian rule. The constitutive facts of such a cause of action are thus stated in Banks v. Morris & Co., 302 Mo. 254, 267, 257 S. W. 482, 484:

"(1) Plaintiff was in a position of peril; (2) defendant had no-

1034

tice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured."

Do such facts appear from the evidence in the instant case? Counsel for appellant say that defendant's answer is an admission that deceased was in peril from the existing situation and from "acts intended to be and about to be done" by defendant. From a reading of the principal and concurring opinions in the Banks case it seems clear that "imminent peril," that is, certain, immediate and impending peril is there meant. Counsel for appellant say that the evidence shows that deceased was in a position of "imminent peril" and defendant knew it in time to have avoided injuring him, citing the Banks case, supra; Hall v. Ry., 219 Mo. 553, 589, 118 S. W. 56; Bobos v. Packing Co., 317 Mo. 108, 117, 296 S. W. 157; Hornbuckle v. McCarty, 295 Mo. 162, 243 S. W. 327; Schulz v. Smercina, 1 S. W. (2d) 113, 318 Mo. 486; Schroeder v. Wells, 310 Mo. 642, 654, 276 S. W. 60; and Kame v. Ry. Co., 254 Mo. 175, 162 S. W. 240. Counsel for respondent insist that the evidence does not show that deceased at the time of his injury was in "imminent peril" within the meaning of the humanitarian rule, citing the Banks case, supra; State ex rel. v. Trimble, 253 S. W. 1014, 300 Mo. 92; Stewart v. Mo. Pac., 272 S. W. 694, 308 Mo. 383; Eversole v. Railroad, 249 Mo. 523, 542, 155 S. W. 419; Degonia v. Railroad, 224 Mo. 564, 595, 123 S. W. 807; and that even if he was, the evidence is insufficient to show that defendant had knowledge thereof, citing the Hall, Stewart and Degonia cases, supra, and Rine v. Railroad, 88 Mo. 392.

Relative to perilous position under the humanitarian rule, in Bobos v. Krey Packing Company, 317 Mo. 108, 117, 296 S. W. 157, we said:

"The position of plaintiff while in the act of climbing onto the truck, considered with reference to its standing still, or moving slowly, was no doubt a comparatively safe one, but with reference to the truck's being 'suddenly and violently started forward' it was extremely perilous."

So in the instant case, it may be said that the position of deceased in the absence of fire was a comparatively safe one, but in the presence of fire it was extremely perilous. When defendant operated its engine so near that sparks and coals of fire therefrom could fall into the gasoline and vapor surrounding the deceased, as the evidence here shows, his peril was imminent, that is, certain, immediate and impending. It is no defense on this appeal to say that there was evidence that these engines had for a considerable length of time been operated up and down the track emitting sparks and coals of

fire without igniting any gasoline vapor, and therefore, peril to the deceased was 'remote, contingent and uncertain. There was also evidence, which we must accept as true in ruling this case, that when deceased and his companions went upon defendant's right of way these engines had not yet begun to move the wreckage; that a few minutes later defendant, without warning deceased of the danger, began operating the engines beside the ravine where the gasoline had for hours been flowing and at a point about opposite the position taken by deceased and his companions; that when the steam derrick undertook to lift or move the first disabled car that could be reached the hoist engine by which it was operated began to chug and puff and throw sparks and coals of fire some of which fell into the gasoline and vapor, and the explosion immediately occurred. With the operation of defendant's engines so near that sparks and coals of fire therefrom could reach the gasoline and vapor surrounding the deceased, as he stood or stopped with his companions by the pool of gasoline apparently ignorant or oblivious of danger, he was undoubtedly in a position of "imminent peril." Counsel for respondent cite no case presenting a similar state of facts that holds otherwise.

Did respondent's agents, servants and employees have knowledge of the fact that deceased was in imminent peril in time to have avoided injuring him? There was evidence that the man who directed the movement of the engines and aided in hooking the disabled car to the steam derrick was the same man who a few minutes before had told deceased and his companions to help themselves to the gasoline, and it further appears that the view between the movement of the engines and the position taken by deceased and his companions was clear and unobstructed up to the time of the explosion. The man who had invited deceased and his companions to help themselves to the gasoline had every reason to expect them to be there, and when about to create a situation of imminent peril to anyone so situated it was his duty to be on the lookout. When to look was to see it will not be said under the circumstances in evidence that he did not see deceased in time to have avoided injuring him. In the Banks case we said (l. c. 267):

"It is of no consequence what brings about, or continues, the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death. [Murphy v. Railroad, 228 Mo. 56; Morgan v. Railroad, 159 Mo. 262; Hanlon v. Railroad, 104 Mo. 388.]"

It would be inconsistent for defendant's counsel to say that its

agents, servants and employees were unaware of the extremely perilous situation they created by operating these engines under the circumstances in evidence when they argue that the danger was so apparent that the deceased, though but a lad of sixteen years, should have known and avoided it. The wrecking crew and foreman in charge not only knew the dangerous situation existing in the presence of fire, but they must also have known the proclivity of a hoist engine to throw sparks and coals of fire when lifting a load. Furthermore, knowledge of the danger of operating these engines under such circumstances was brought home to defendant in mandatory fashion by certain sections of the above mentioned Regulations of the Interstate Commerce Commission, the paragraphs of which were numbered to correspond to the rules and regulations of the American Railway Association. According to the evidence deceased was in position of imminent peril, defendant had knowledge of that fact in time with means at hand to have avoided injuring him without injury to anyone else, but failed to warn or otherwise exercise ordinary care to do so, and by reason thereof he was injured. The constitutive facts of a cause of action under the humanitarian rule as set forth in the Banks case appear from the evidence in this case, and the trial court erred in overruling plaintiff's motion to set aside the order of nonsuit and for a new trial.

Counsel for respondent do not discuss appellant's claim of right to recover on the theory of primary negligence, apparently resting as to this contention on their assertion that deceased was a trespasser. Defendant was not entitled to a peremptory instruction on this theory. The fact that defendant dug trenches and holes along the bed of the ravine within twenty feet of the track and permitted the gasoline to collect therein without making any effort to divert it to a safe distance or cover it with earth or any other substance, coupled with the further fact that numerous persons were permitted to come on the right of way and dip up and carry away gasoline all afternoon and deceased and his companions were invited to help themselves indicated that defendant undertook to get rid of as much of the dangerous fluid as possible in this way. Therefore, plaintiff had a right to go to the jury on these facts as evidence that deceased and his companions were allowed to help themselves to gasoline not only for their own benefit, but also for the aid and benefit of defendant, in which case defendant owed deceased as an invitee the duty to exercise ordinary care for his safety. There was substantial evidence as above indicated, that defendant failed to discharge this duty and that such failure was the proximate cause of deceased's injury. The issue of primary negligence should have been submitted to the jury.

Appellant also contends that the case should have been submitted

to the jury on the theory, as we understand it, that plaintiff's son was injured by the commission of a felony, consisting of the above noted violation by defendant and its employees of certain duties imposed upon them by said regulations of the Interstate Commerce Commission; that Section 4240, Revised Statutes 1919, created and vested in plaintiff a cause of action on that account separate and distinct from that created by Sections 4217, 4218 and 4219 of the wrongful-death statute; and that pleas of contributory negligence and assumption of risk were not available to defendant. Section 4240 is as follows:

"In no case shall the right of action of any party injured by the commission of any felony or misdemeanor be deemed or adjudged to be merged in such felony or misdemeanor; but he may recover the amount of damage sustained thereby in an action to be brought before any court or tribunal of competent jurisdiction."

If any "right of action" ever existed under this statute on the facts here presented it evidently belonged to plaintiff's son because he was the party injured by the commission of the felony, if any felony was committed and caused his injuries. But his right of action, if any existed, abated with his death, and a new right of action created by penal Section 4217 and damage Sections 4218 and 4219 of the wrongful-death statute was thereupon vested in his mother. [State ex rel. Thomas v. Daues, 314 Mo. 13, 31, 283 S. W. 51; Betz v. K. C. Southern Ry. Co., 314 Mo. 390, 397, 284 S. W. 455; Grier v. Ry. Co., 286 Mo. 523, 228 S. W. 454; Clark v. Ry. Co., 319 Mo. 865, 878, 6 S. W. (2d) 954.] Plaintiff's right of action, therefore, was created by the wrongful-death statute and not by Section 4240. Nevertheless, it is essentially one for the wrongful death of her son, and she has the right under this statute to plead and prove every wrong causatively connected with his death which would have given him a right of action against the defendant if death had not ensued. [Crumpley v. Railroad, 98 Mo. 34, 37, 11 S. W. 244.] Plaintiff pleaded and introduced evidence tending to prove defendant's violation of certain regulations of the Interstate Commerce Commission, particularly one that inflammable liquids spilled from tank cars should be well covered with dry earth before an engine is used in the vicinity, and also pleaded the act of Congress pursuant to which such regulations were issued which made their violation a felony. The pertinent sections of this Act of March 4, 1909, 35 U. S. Statutes at Large, page 1135, Section 233, as amended by Act of March 4, 1921, U. S. Code Annotated, Title 18, pages 231-236, are as follows:

"383. The Interstate Commerce Commission shall formulate regulations for the same transportation within the limits of the jurisdiction of the United States of explosives and other dangerous ar-

ticles, including inflammable liquids, inflammable solids, oxidizing materials, corrosive liquids, compressed gases, and poisonous substances, which shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives or other dangerous articles by land or water, and upon all shippers making shipments of explosives or other dangerous articles via any common carrier engaged in interstate or foreign commerce by land or water. . . .

"385. . . . Whoever shall knowingly violate, or cause to be violated, any provision of this section, or of sections 382 to 384 of this title, or any regulation made by the Interstate Commerce Commission in pursuance thereof, shall be fined not more than $2,000 or imprisoned not more than eighteen months, or both.

"386. When the death or bodily injury of any person results from the violation of sections 382 to 385 of this title, or any regulation made by the Interstate Commerce Commission in pursuance thereof, the person or persons who shall have so knowingly violated, or cause to be violated, such provision or regulation, shall be fined not more than $10,000, or imprisoned not more than ten years, or both."

Defendant objected to the admission in evidence of the regulations above referred to on the ground that they were promulgated under the Act of March 4, 1909, Section 233 of which provided for the safe transportation of "explosives" only, the phrase "and other dangerous articles, including inflammable liquids, etc.," appearing for the first time in the amendment of March 4, 1921. Counsel for respondent argue that the regulations in question having been promulgated under the Act of March 4, 1909, and not again promulgated after the amendment of March 4, 1921, were issued without authority and not binding on defendant. We are not favorably impressed with this argument. For many years courts, legislative and administrative bodies, and lexicographers have defined gasoline as an explosive. [Bourgeois v. Miller, 104 Atl. 383, 385; O'Hara v. Nelson, 71 N. J. Eq. 161; National Petroleum Assn. v. Ry. Co., 38 I. C. C. 65; Buchholz v. Standard Oil Co., 211 Mo. App. 397, 244 S. W. 973; Funk & Wagnalls Standard Dictionary.] Gasoline falls within the classification of "explosives" although it is also an "inflammable liquid," and the latter phrase was evidently used in the amendment so as to include other inflammable liquids that might not properly be termed explosives. Respondent also suggests that the language of Sections 385 and 386 limits the application of these sections to persons who "knowingly" violate the regulations referred to, and that there is no evidence that defendant, its agents, servants or employees had any actual knowledge of the existence of these regulations. Judicial notice is taken of such orders and regulations.

[Caha v. United States, 152 U. S. 211; Jenkins v. Collard, 145 U. S. 546; Knight v. U. S. Land Assn., 142 U. S. 161; Goulette's Admr. v. Grand Trunk Ry. Co., 107 Atl. 118.] The regulations introduced in evidence were certified by the Secretary of the Interstate Commerce Commission as having been in effect during the month of July, 1921, and contained a recital that the paragraphs were numbered to correspond to the rules and regulations of the American Railway Association, so defendant cannot well plead ignorance of the existence of these regulations or urge that they are unreasonable.

In their original brief counsel for respondent contend that the above regulations were "promulgated for the protection of those engaged in interstate commerce, and at the most for the general public or persons who might be lawfully in the vicinity of the dangerous substances while in transportation." We then thought and still think that this contention, however made, is answered by our ruling that under the pleadings and evidence defendant owed deceased as an invitee the duty to exercise ordinary care for his safety. But, in their motion for a rehearing, counsel for respondent shift the emphasis and say that these regulations were for the benefit of the public in general, or for the protection at the most of those who were engaged in interstate commerce; that deceased was at the most only a member of the general public and violation of such rules and regulations by defendant gave no cause of action either to the deceased or his representatives. A part of Corpus Juris, page 957, is quoted as supporting this view, but we do not think the section when read as a whole can be so interpreted. The rule as to the probative effect of violation of statute law is thus stated in 20 Ruling Case Law, Section 33, pages 38, 39, 40:

"In a majority of jurisdictions it is stated as a general rule of law that the violation of a penal or criminal statute is actionable negligence, or as frequently stated is 'negligence *per se*' or 'negligence as a matter of law.' And this is true although the defendant may also be subject to a penalty provided by the enactment. The principle comprehensively stated is that where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose protection or benefit it was imposed for any injuries of the character which the statute or ordinance was designed to prevent, and which were proximately produced by such neglect. The precise requirement of the statute must be complied with; no person is at liberty to adopt other methods and precautions which in his opinion are equally or more efficacious to avoid injury. Nor is it any defense that the statute has been generally violated. Thus, for example, it has been held that a merchant cannot escape liability for injuries caused by his selling naphtha as stove polish contrary to

statute by the fact that other dealers did the same thing. Some courts insist that a violation of statute is not negligence as a matter of law, but is merely prima-facie evidence of negligence. And in a few jurisdictions it is declared to be the rule that the failure to discharge a duty imposed by statute affords evidence, more or less weighty according to the circumstances of the particular case, but never conclusive, upon which a finding of negligence may justifiably be based. It seems to be admitted, however, that the violation of law standing alone is sufficient evidence to justify a finding in favor of the plaintiff.''

It is also a well settled rule that a person cannot recover from another for negligence based upon the violation of a statute or ordinance which is not intended for the benefit or protection of the plaintiff. [9 Ann. Cas. 427.] This concept has been variously stated by the courts. In some states it is said that the injury complained of must have been such as the legislation was intended to prevent; in others it is said that the Legislature must have intended to create a private liability as distinguished from one of a public character; in still others it is said that in order for a plaintiff to prevail he must bring himself within the class of persons for whose benefit or protection the law was enacted; while some courts favor a liberal interpretation of such statutes and hold that a right of action may exist although the law was not enacted primarily for the plaintiff's benefit. [20 R. C. L. 41, 42, sec. 35; 9 Ann. Cas. 428; Dickson v. Omaha & St. L. Ry. Co., 124 Mo. 140, 148, 27 S. W. 476.] The indefiniteness of any formula based on an attempted distinction between statutes, which as respondent here contends, create a public liability and those which impose private responsibility, and the consequent difficulty of applying such, is indicated in 20 Ruling Case Law, Section 36, page 42. Not only is a private responsibility created where plaintiff is clearly within a particular class which the statute is expressly designed to protect, as in Berdos v. Tremont Suffolk Mills, 209 Mass. 489, 492; Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. 33, 39; and cases cited in Boesel v. Wells Fargo & Co., 260 Mo. 463, 479, 480, 169 S. W. 110; but also where the duty is due to the public as individual persons, as in Hayes v. Michigan Central Railroad Co., 111 U. S. 228, 240; Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 283; Atchison, T. & S. F. Railroad Co. v. Reesman, 60 Fed. 370, 373; Strait v. Yazoo & M. V. Railroad Co., 209 Fed. 157, 161; 1 Shearman & Redfield on Negligence (6 Ed.) sec. 13a; Sluder v. St. Louis Transit Co., 189 Mo. 107, 88 S. W. 648, 5 L. R. A. (N. S.) 186, and note; 47 L. R. A. (N. S.) 821, note; Bluedorn v. Ry. Co., 108 Mo. 439, 447, 18 S. W. 1103. The regulations here in question have been construed to be for the protection and safety of railway employees *and of the public* (Davis v. Gossett & Sons, 30 Ga. App.

576, 118 S. E. 773, affirmed in Gossett & Sons v. Davis, 124 S. E. 529, 158 Ga. 886) ; and in National Petroleum Assn. v. Ry. Co., 38 I. C. C. 65, 68, 72, it is said that the danger at which they are directed *is not restricted to railroad employees,* and that *such a rule is in the nature of a Federal police regulation formulated pursuant to the statute and not shown to be unreasonable.* The regulations in question were evidently designed in part at least to protect such individuals of the general public as might be subjected to danger by their violation, and plaintiff's son so came within the range of their protection. The penalty provided for such violation was not recoverable by him and, had not death ensued, his remedy would have been by an action for damages. [1 C. J. 993, sec. 109; Sec. 4240, R. S. 1919; Gray v. McDonald, 104 Mo. 303, 16 S. W. 398; Miller v. Harpster, 273 Mo. 605, 614, 201 S. W. 854.] In this State violation of a duty imposed by statute or ordinance is generally held to be negligence *per se,* but subject to the defense of contributory negligence. [Keim v. Union Railroad Co., 90 Mo. 314, 321, 2 S. W. 427; Hutchison v. Ry. Co., 161 Mo. 246, 253, 61 S. W. 852.]

The defense of assumption of risk is confined to the relation of master and servant (Fish v. Railroad, 263 Mo. 106, 124, 172 S. W. 340), and as the deceased was not in the employ of defendant this defense is not in the case.

Counsel for appellant cite Gray v. McDonald, 104 Mo. 303, 16 S. W. 398, in support of the claim that defendant should not be permitted to interpose the defense of contributory negligence. The opinion plainly says (p. 313) : "This action is not founded on negligence at all," etc. Evidently, the pleader simply charged wrongful death by commission of the crime of assault and battery, thus relying upon the criminal intent of defendant. The instant case is distinguishable in that the acts constituting the alleged violation were uniformly and solely charged as "negligently" done.

There was substantial evidence that violation of the regulations pleaded was the proximate cause of the death of plaintiff's son, and it became the duty of the trial court to submit the case on that theory also under proper instructions. [Peterson v. Railroad, 265 Mo. 462, 479, 178 S. W. 182.]

Counsel for appellant also contend that plaintiff made a case for the jury on the theory that defendant created and maintained an attractive nuisance, but the evidence adduced does not justify the application of that doctrine.

For the reasons above stated the judgment is reversed and the case is remanded for a new trial. All concur.

1042

PER CURIAM:—Appellant has filed a motion to transfer this cause to Court en Banc ''for the reason that a Federal question is involved herein, to-wit: whether or not the violation of rules or regulations of the Interstate Commerce Commission affords a cause of action to anyone not engaged in interstate commerce, as was the decision in this case, and under the provisions of Section 4 of the amendment of 1890 to the Constitution of the State of Missouri, it is provided that when a Federal question is involved the cause, on application of the losing party, shall be transferred to the Court en Banc for decision.''

The question here raised involves the interpretation and application and not ''the validity'' of the statute or authority exercised under the United States. Under our ruling in Florence McAllister, Administratrix of the Estate of William McAllister, v. St. Louis Merchants' Bridge Terminal Railway Company, *ante*, p. 1005, 25 S. W. (2d) 791, this is not a proper ground for transfer to Court en Banc. The motion to transfer is denied.