**KANSAS CITY TERMINAL RAILWAY COMPANY, a Corporation, Respondent,**

v.

**Keith L. MANION et al., Appellants.**

**No. 45128.**

Supreme Court of Missouri.

Division No. 1.

April 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied May 14, 1956.

Ralph M. Jones, Charles B. Blackmar, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, Harold C. Heiss, Russell B. Day, Cleveland, Ohio, of counsel, for appellants.

Horace F. Blackwell, Jr., Sam D. Parker, Lathrop, Righter, Blackwell & Parker, Kansas City, for respondent.

Kenneth F. Burgess, Walter J. Cummings, Jr., William K. Bachelder, Sidley, Austin, Burgess & Smith, Chicago, Ill., of council, for amici curiæ.

Clarence M. Mulholland, Toledo, Ohio, Edward J. Hickey, Jr., Washington, D. C., Richard R. Lyman, Toledo, Ohio, Mulholland, Robie & Hickey, Toledo, Ohio, of counsel, for Railway Labor Executives' Ass'n.

DALTON, Presiding Judge.

Action in equity for an injunction to prevent defendants from engaging in a threatened strike. The defendants include certain representatives of a labor union and other employees of plaintiff as hereinafter referred to. After a hearing, a permanent injunction was ordered and defendants have appealed.

Plaintiff (respondent here) is a corporation and common carrier by railroad, engaged in interstate commerce and subject to the Railway Labor Act, 45 U.S.C.A. § 151 et seq. It owns and operates various railroad terminal facilities, including engines and tracks for switching and transfer of railroad equipment for various railroads in Kansas City, Missouri and Kansas.

The Brotherhood of Locomotive Firemen and Enginemen (hereinafter referred to as Brotherhood) is a voluntary unincorporated railroad labor organization and, since March 31, 1951, it has been the collective bargaining representative under the Railway Labor Act for all firemen, engineers, hostlers and hostler helpers employed by plaintiff. Certain named officers of the Brotherhood and all its members as a class were defendants in the action.

On March 31, 1951, plaintiff and the Brotherhood, as collective bargaining representatives for said employees of plaintiff, executed a collective bargaining agreement providing that all claims or grievances by or on behalf of any of the employees involved would be processed by presentation to a designated officer of the carrier and if the claimant were dissatisfied with the decision it could be appealed through to the carrier's highest officer designated to handle claims and grievances. Subsection 2 of Article VII of said agreement provides: "(c) The procedure outlined in Paragraphs (a) and (b) shall govern in appeals taken to each succeeding officer. Decision by the highest officer designated to handle claims and grievances, shall be final and binding unless within sixty days after written notice of the decision of said officer he is notified in writing that his decision is not accepted. All claims or grievances involved in a decision of the highest officer shall be barred unless, within six months from the date of said officer's decision, proceedings are instituted by the employee or his duly authorized representative before a tribunal having jurisdiction pursuant to law or agreement of the claim or grievance involved. It is understood, however, that the parties may by agreement in any particular case extend the six months period herein referred to."

On April 14, 1953, this collective bargaining agreement was amended by the addition of what is referred to as the "no new work rule." The amendment provides that engineers, firemen and hostlers would be given no new work after completing a day's work of eight hours, except that they might be required to finish the work they were performing at the end of the eight hour day, and that they would also be expected to work overtime in the event of an emergency.

A disagreement arose between plaintiff and its employees as to the meaning of this

rule and claims were filed by employees and prosecuted by the Brotherhood for penalty pay for overtime and for pay for other work based upon alleged violations of the agreement by plaintiff. By June 26, 1953, a total of 100 time claims based upon violation of the "no new work rule" had been filed and four time claims based upon other rules of the collective bargaining agreement, these claims were all rejected by plaintiff's highest designated officer on September 25, 1953. By September 6, 1954, a total of 860 engineers' time claims and 864 firemen's time claims for penalty pay based upon alleged violations of the "no new work rule" had been filed against plaintiff and denied by its highest designated officer. As of November 1, 1954, a total of 2183 time claims in the amount of $54,117.48 had been filed against plaintiff. These claims were declined by plaintiff's designated officer and notice of disagreement with such declination was given to plaintiff.

It was stipulated between the parties, as follows: "Payment has been made for all straight time worked by the employees for or on whose behalf claims herein involved have been presented, and overtime for hours actually worked has been paid at one and one half times the computed hourly rate of the employees. The claims filed are for penalty pay in addition to this. * * * No proceedings to enforce the payment of any of the foregoing time claims have ever been instituted by any defendant or his duly authorized representative before any court or before the National Railroad Adjustment Board or before any tribunal having jurisdiction thereof pursuant to agreement of the parties."

Other evidence tended to show that on February 3, 1954, the Brotherhood circulated among the employees what is termed a "Strike Ballot." The document recited the inability of the Brotherhood to obtain adjustment of (1) Time claims based upon violation of the "no new work rule"; (2) Time claims based upon work "farmed out" by plaintiff to employees of another railroad; (3) Miscellaneous time claims based on other contract provisions and other unsettled matters; and (4). Proposed changes in the terms of the collective bargaining agreement. A copy was furnished to plaintiff. The vote was in favor of striking, if no satisfactory adjustment was made, but no date for a strike was set at the time.

On February 11, 1954, plaintiff invoked the services of the National Mediation Board under the heading "Proposed Rule Changes," under the Railway Labor Act to preserve the status quo, but took the position that issues 1, 2, and 3 on the "Strike Ballot" were proper cases for the National Railroad Adjustment Board. On February 15, 1954, the Secretary of the National Mediation Board advised the President of the Brotherhood that plaintiff had so "invoked the Board's services on the question under the heading 'Proposed Rule Changes.'" A federal mediator (Lane) was assigned to mediate the dispute and he appeared in Kansas City on March 23, 1954, to attempt mediation "on all mediable items." Plaintiff refused to grant a conference to defendants' representatives to discuss time claims in mediation and contended that these were not mediable matters. The Brotherhood offered, as indicated above, to attempt to settle both contract changes and time claims and maintain the status quo if the board would take jurisdiction of the entire dispute, but notified Mediator Lane that, if the time claims were not included in the mediation conferences, a strike date would be set. Thereafter, the Brotherhood set a date for a strike and notified the National Mediation Board of this action. The National Mediation Board communicated with both parties and requested that they immediately enter into conferences on the time claims as well as on the rule changes, and that the threatened strike be deferred. The Brotherhood indicated its agreement, but plaintiff reiterated its claim that the time claims were not mediable matters and, ultimately, advised the National Mediation Board that a restraining order had been obtained in the present case. The Board took no further action.

Plaintiff in its amended petition alleged that neither the Brotherhood, as representative of said employees, nor any employee defendant individually "instituted any pro-

ceedings before a tribunal having jurisdiction pursuant to law or agreement of the claims involved"; and that within 60 days after the claims were finally disallowed, they were barred by the collective bargaining agreement; and that defendant's strike to enforce these claims was an unlawful breach of the said agreement. Plaintiff further alleged that "Independent of and apart from the agreement, the Railway Labor Act imposes upon defendants, and each of them, the affirmative duty to pursue and exhaust the administrative remedy available to defendants under said Act which required the orderly prosecution of said time claims before the National Railroad Adjustment Board, the only tribunal having jurisdiction under the Act to determine the merits of these time claims, and precludes a strike by defendants to enforce these time claims." Defendants denied this allegation as a legal conclusion.

Plaintiff further alleged that the strike was unlawfully threatened "against plaintiff for the purpose of compelling plaintiff to pay defendants' time claims for penalty pay and for other pay not legally enforceable by any proper tribunal and in violation of defendants' contractual agreement and statutory duties to pursue and exhaust the remedy provided by the contract and the Railway Labor Act." In effect plaintiff charged that defendants had unlawfully breached their contractual and statutory obligations to plaintiff by calling a strike against plaintiff to enforce the payment of the time claims against it.

Defendants admitted a strike ballot was spread and that defendants authorized a strike "on account of certain time claims and other matters," but alleged that "defendants have at all times been willing to comply with all orders of the National Mediation Board with respect to said strike." Defendants further alleged that the circuit court was without jurisdiction to prevent a strike in interstate commerce; that it had no jurisdiction over an action relating to the interpretation or application of a collective bargaining agreement; that exclusive jurisdiction was vested in the National Mediation Board and other tribunals established by federal law; that plaintiff had failed to exhaust its administrative remedies; that plaintiff had refused the proffered services of the National Mediation Board; that plaintiff had failed to seek action by the National Railroad Adjustment Board; that "prior to the filing of plaintiff's complaint herein the services of the National Mediation Board were invoked with respect to the claims in the petition described; that the National Mediation Board was willing to accept jurisdiction in the premises * * *"; and that plaintiff was entitled to no relief in equity.

The judgment entered by the trial court provided: " * * * that defendant Keith L. Manion, M. F. Landes, and J. M. Dibal, Jr., as representatives of and for the Brotherhood of Locomotive Firemen and Enginemen (hereinafter called B.L.F. & E.) and of Roanoke Lodge No. 692 thereof and of and for the class of firemen, engineers, hostlers and hostlers helpers employed by plaintiff similarly situated, and the said Keith L. Manion, M. F. Landes, and J. M. Dibal, Jr., individually and each of the other defendants herein individually, and all of their agents, servants, attorneys, employees and all persons in active concert or participation with them, *be and they hereby are perpetually enjoined and restrained from enforcing or attempting to enforce the payment of any claims for penalty pay for the violations or alleged violations of any of the provisions of the collective bargaining agreement* between plaintiff and B.L.F. & E., dated March 31, 1951, as heretofore modified, *by calling,* ordering, instructing, recommending, precipitating, encouraging, inducing, permitting, or engaging or participating or taking part in, in whole or in part or in anywise or manner, *any strike* against plaintiff or on plaintiff's property and any picketing or picket line in or around plaintiff's property and any slow down or interference with, in anywise or manner, the orderly and prompt continuance of work on plaintiff's property * * *." (Italics ours).

We must first determine whether this court has jurisdiction of this appeal. Plain-

tiff-respondent has moved to transfer the case to the Kansas City Court of Appeals on the ground that jurisdiction is exclusively vested in that court and this court is without jurisdiction.

Appellants say the appeal presents three questions for decision: (1) the right of plaintiff to invoke the equity jurisdiction of the court in the face of an available and unused administrative remedy established by the Congress as a means of preventing strikes by railway employees; (2) whether the time claims denied on September 25, 1953, by plaintiff's "highest officer designated to handle claims and grievances," became barred on March 26, 1954 by reason of the six month contractual limitations provision in a collective agreement applicable to the employees; and (3) "whether the Congress intended to take from the employees of the railway industry, when it enacted the 1934 amendments to the Railway Labor Act, the right to strike when accumulated time claims and grievances become a source of dispute between a carrier and its employees." As to this last point, appellants say, "The issue concerns the settlement of a grievance concerning overtime work, in which claims for money may be quite incidental to the substance of the grievance." Appellants further insist that "the issue before the court turns upon the interpretation of the Railway Labor Act," and say (1) that the Railway Labor Act does not take from employees the right to strike overtime claims and grievances; and (2) that the strike was not a breach of the contract.

The assignments of error in appellants' statement of points and authorities are (1) that the "court erred when it enjoined the defendants from striking, or causing a strike, for the purpose of enforcing the settlement of time claims and grievances"; (2) the court erred in holding "the claims barred by a six month contractual limitation provision" for the reason that "the six months limitation period was stayed by appropriate proceedings instituted within the period allowed by the terms of the agreement"; (3) that the decision of the trial court is erroneous and "inconsistent with principles of equity jurisprudence to grant the extraordinary remedy of injunction to a party who has disregarded the Federal doctrine of primary administrative jurisdiction and, in doing so, has prevented the defendants from having the remedy available through mediation, arbitration and emergency board proceedings provided by the Railway Labor Act" (the theory being that plaintiff has by its own action frustrated settlement through mediation and arbitration); and (4) that the court erred in not applying the "clean hands" doctrine of equity against the plaintiff.

Appellants insist that we have jurisdiction of the appeal on the ground (1) that the amount involved exceeds $7,500; (2) that "the case involves the validity of authority exercised under the laws of the United States"; and (3) that "the case draws into question the construction of the Fourteenth Amendment of the Constitution of the United States and the Supremacy clause contained in Article VI of the Constitution of the United States."

Considering the last point first, it has been noted that no assignment of error calls for the construction of any article of or any amendment to the Constitution of the United States and, for that matter no article, section or amendment of the Constitution of the United States is cited or referred to under appellants' statement of points and authorities. Since no such issue is presented, the case is not one "involving the construction of the Constitution of the United States" and we do not have jurisdiction on that ground. City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, 379.

In support of their contention that the amount involved exceeds $7,500, appellants insist that the amount in dispute is the amount of the time claims; and that the court should take judicial notice that the strike on plaintiff's railroad would involve a loss of more than $7,500. Appellants further say that "plaintiff seeks an injunction against the defendants' attempt to enforce $54,000 worth of time claims" by striking; that "if plaintiff is successful;"

then the record shows that there would be no possible remedy still available to defendants as to at least $17,000 worth of claims"; that, if plaintiff's position (that the only tribunal having jurisdiction over these claims is the National Railroad Adjustment Board) is sustained, then these claims would be forever barred; that "the suit seeks to enjoin defendants individually from striking in order to attempt to obtain an adjustment of the claims in issue"; that "the whole reason for this suit is that the appellants claim that respondent owes them money for breach of contract"; and that "the question here is how appellants may seek enforcement of their claims." Appellants further say "it is patently obvious that respondent stands to gain more than $7,500 if it is able to prevent a strike"; and that a brief interruption of respondent's business by a strike "would result in a loss of more than $7,500."

As stated, this is an action in equity for an injunction to prevent a strike. The amended petition upon which the cause was tried contains no allegation from which we may determine the pecuniary value to plaintiff of the relief sought, nor the damage to the defendants, should relief be granted, nor vice versa, should relief be denied. The decree granting relief contains no finding with reference to the amount in dispute, nor as to the value of the relief sought and granted. However, it is apparent that the finding and judgment was in no way dependent upon whether the time claims for penalty pay had a pecuniary value in excess of $7,500.

The amended petition alleged that defendants and the employees represented " * * * filed, and are now filing, time claims against plaintiff for penalty pay for overtime and for pay for other work to which they claim to be entitled by plaintiff's alleged violation of said agreement. * * * Said employees were paid by plaintiff for the overtime they actually worked at the rate of time and one half. The penalty pay claimed is for time not actually worked at the rate of an additional day's wage at time and a half." Defendants

admitted that such claims had been and were being filed, but denied the other allegations.

No evidence was offered by the parties concerning the pecuniary value of any of these claims; but the facts are stipulated that the claims are not based upon work and labor performed. There was no evidence that the pecuniary value of the claims involved exceeded $7,500, and there was no evidence as to the money value to plaintiff of the relief sought or of the loss to defendants if the relief were granted, or vice versa should relief be denied. The well established rule is that "Where our jurisdiction is invoked on the basis of the amount in dispute and a money judgment is not sought, then such amount must be determined by the money value of the relief to plaintiff, or of the loss to defendant, should the relief be granted, or vice versa, should the relief be denied. * * * The amount in dispute cannot be left to speculation or conjecture but must affirmatively appear from the record in the cause to be in excess of $7,500." Frank Schmidt Planing Mill Co. v. Mueller, 347 Mo. 466, 147 S.W.2d 670, 671; Superior Press Brick Co. v. City of St. Louis, Mo.Sup., 152 S.W. 2d 178, 183. Plaintiff-respondent invoked the jurisdiction of the trial court to obtain an injunction and prevent the proposed strike. No other relief was asked. The right to relief by injunction depended upon whether appellants' contemplated strike to enforce the payment of the time claims was legal or illegal. Appellants' manner of enforcement and efforts to enforce the collection of the claims was an issue. The decree only enjoined and restrained the defendants from enforcing or attempting to enforce the time claims for penalty pay by striking. This court has no jurisdiction of the appeal on the ground that "the amount in dispute, exclusive of costs, exceeds the sum of Seventy five hundred dollars." Fred A. H. Garlichs Agency Co. v. Anderson, 284 Mo. 200, 223 S.W. 641; Stewart v. Stewart, Mo.Sup., 269 S.W.2d 49, 51; Frank Schmidt Planing Mill Co. v. Mueller, supra, 147 S.W.2d 670, 671; Superior Press

Brick Co. v. City of St. Louis, supra, 152 S.W.2d 178, 183; Holland v. City of St. Louis, Mo.Sup., 262 S.W.2d 1, 4.

■ Does the appeal involve "the validity of * * * any authority exercised under the laws of the United States?" Appellants' theory is that "the case involved the validity of the action of the National Mediation Board, which is an agency of the United States, and therefore involves the validity of authority exercised under the laws of the United States." Respondent, on the other hand, concedes that appellants' contention (that respondent was required to exhaust its administrative remedies) requires a construction and interpretation of the Railway Labor Act, but respondent claims the appeal raises no question of the validity of the Act or of any authority exercised by the National Mediation Board. Appellants admit that the National Mediation Board "has no authority to force settlement, but rather proceeds by attempting to persuade the parties to reach a voluntary agreement"; that respondent refused to discuss the time claims in mediation; and that "the National Mediation Board ceased its mediatory efforts." Appellants argue that the appellate court "will necessarily have to reach a decision as to the validity of the authority which the National Mediation Board has sought to exercise"; and that respondent "must necessarily maintain its contention that the National Mediation Board has no authority over time claims," hence appellants say the appeal "draws directly into question an authority exercised under the laws of the United States."

The dispute was never finally submitted to the National Mediation Board; the respondent never agreed to submit the time claims to mediation, while appellants refused mediation unless the time claims were admitted; hence no action was taken by the National Board of Mediation and no authority exercised by it is called in question on this appeal. Appellants have cited Beekman Lumber Co. v. Acme Harvester Co., 215 Mo. 221, 114 S.W. 1087 and say it is "exactly parallel to this case." In that

case a United States District Court had entertained bankruptcy proceedings against the defendant and had enjoined the plaintiff from prosecuting elsewhere its claim on an account for lumber sold to defendant. The plaintiff nevertheless proceeded with its suit in the circuit court of Jackson County, and defendant pleaded the injunction decree in abatement. The Supreme Court of Missouri held that it had jurisdiction over the appeal, on the ground that the federal court was exercising authority under the laws of the United States and that the validity of the federal proceedings was in issue. We think the case has no application here, where the differences between the parties were never finally submitted to mediation, and the National Mediation Board has exercised no authority because the parties refused to submit their differences to mediation, therefore, the Board ceased its mediatory efforts and abandoned the controversy. No authority exercised by the National Mediation Board under the laws of the United States is called in question in this proceeding. Kettelhake v. American Car & Foundry Co., 243 Mo. 412, 417, 147 S.W. 479; Sound Investment & Realty Co. v. Griffin, Mo.App., 205 S.W.2d 257, 260. It further appears that neither of the parties have submitted the time claims to the National Railroad Adjustment Board and no foundation has been laid for its jurisdiction and none has been exercised.

■■ Appellants in their reply brief say that "the issue before the court turns upon an interpretation of the Railway Labor Act" and that the state courts are without jurisdiction to determine the matter, citing Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. If that is true, nevertheless, this court has no jurisdiction of this appeal. The necessity for an interpretation and application of the terms of a federal statute does not bring the case within the state constitutional provision conferring appellate jurisdiction on this court on the theory that the validity of authority exercised under the laws of the United States is in question. Service Purchasing Co. v. Brennan, Mo.Sup., 32 S.W.2d 81, 82; Mitchell v. Joplin Nat. Bank, Mo.Sup., 201

S.W. 903, 904. And see Huckleberry v. Missouri Pac. R. Co., 324 Mo. 1025, 26 S.W. 2d 980, 988; and Pashea v. Terminal R. Ass'n of St. Louis, 350 Mo. 132, 165 S.W. 2d 691, 696, as to the existence of a federal question.

■ While the case requires the construction of a contract entered into between the parties and a consideration of the statutes under which the contract was entered into, we find no basis for this court's jurisdiction on appeal. The cause should be transferred to the Kansas City Court of Appeals.

It is so ordered.

All concur.