Mike Bobos, Jr., A Minor, By His Next Friend, Gustav E. Enders, Appellant, v. Krey Packing Company.—296 S. W. 157.

Division One, May 24, 1927.

1. ASSIGNMENT: Error in Instructions: General. A general assignment, in the motion for a new trial, of error in the giving and refusal of instructions is sufficient in a civil case. An assignment in the motion that "the court, over the objection and exception of the plaintiff, gave to the jury, at the request and on behalf of defendant, illegal, improper and erroneous instructions," is sufficient to authorize the appellate court to review alleged errors in said given instructions.

2. NEGLIGENCE: Injury to Invitee: Reckless or Wanton Act of Servant: Liability of Master. A servant has no implied authority to invite or permit third persons to ride upon a vehicle in his charge, but his act in so doing, unless expressly authorized by the master, is not a mere deviation from his instructions, but a complete abandonment of the master's business, and the person so riding on the vehicle is an invitee as to the servant, but a trespasser as to the master, and the master is not liable for an injury to the servant's invitee, unless the servant's act which caused the injury was committed while he was acting within the scope of his employment; but it is also the law that if the servant, after his unauthorized act and the violation of his duty to the master, and while again acting within the general scope of his authority, becomes guilty of wanton, wilful or reckless negligence in the operation of the vehicle, and injuries to the invitee or licensee result therefrom, the master is liable therefor.

3. ———: ———: Driver of Automobile: Reckless or Wilful Act: Liability of Master. For the negligent act of the driver of an automobile truck, who, seeing a fifteen-year-old boy step into the street and hold up his hand to him to stop, stopped the truck or brought it to a very slow movement, and, as the boy with one hand grasped the handlebar on the side of the cab, one foot on the step and the other off the ground, in the act of pulling himself up into the truck, suddenly and violently started the truck, the master is liable in damages for the injury to the boy resulting from the said violent and reckless act of the driver in starting the truck. In driving the truck along the street the driver was prosecuting his master's business; when he stopped or began to slow down he abandoned his master's business; when he started the truck again he resumed his master's business, and his reckless or wanton or wilful act in starting it suddenly and violently when he knew the boy was in danger and would likely be injured thereby, was within the scope of his employment, and his master's act.

4. ———: ———: ———: Pleading by Intendment: Resuming Master's Business. An allegation by intendment that the putting of the truck in motion or increasing its speed by the driver after it had stopped to permit an invitee to get on was for the purpose of taking up the master's business where it had been left off when the truck was stopped or slowed down, is a permissible method of pleading after the supporting evidence is in.

5. ———: ———: ———: Pleading: Wanton or Reckless Act: Humanitarian Doctrine. A perilous position as used in defining and applying the humanitarian doctrine is a relative term, and a petition which states the facts creating the perilous position is not to be considered as a charge of primary negligence, although it does not expressly state that the act which caused the injury to the trespasser was wilfully or wantonly or recklessly done. The perilous position of a pedestrian who, by invitation of the driver of an automobile truck, attempts to climb into its cab, is created by

the sudden and violent starting of the truck while he, with one foot on the cab step and the other off the ground, is grasping the handhold, in an attempt to get on; and the perilous position being thus alleged and thus present, an allegation that the driver, with knowledge of plaintiff's said peril, suddenly and violently started the truck, and in doing so failed to exercise ordinary care, is equivalent to a charge of wilfulness, wantonness or recklessness.

6. ———: **Instruction: Humanitarian Doctrine: Contributory Negligence.** Contributory negligence is no defense where the case is pleaded under the humanitarian doctrine; and where the negligence charged is that the driver of the automobile truck suddenly and violently started it while the plaintiff, as the driver knew, was in a perilous position in attempting to get on, and all the negligent acts of plaintiff occurred before he got into the perilous position, the giving of an instruction for defendant which in effect confines the jury to a consideration of the specific acts of contributory negligence pleaded in the answer, and specifically directs them to find for defendant if plaintiff's injury was caused in any degree by want of care on his part, is reversible error.

7. ———: ———: **Scope of Employment: Recklessness.** An instruction advising the jury that "by the words 'scope of duty' is meant the particular duties which the servant is employed to perform and what, with the knowledge of his employer, he actually did perform when engaged in the service of the employer" gives the jury no assistance, but is calculated to mislead them, in a case against the master wherein the driver of an automobile truck, having stopped it to permit plaintiff to get on and having resumed his master's business, and knowing the plaintiff's peril in attempting to mount, suddenly and violently started the truck, and thereby caused his injury.

8. ———: ———: **Accident.** An accident instruction in the usual form can only serve to divert the minds of the jury where the real issue is whether the plaintiff's injury was caused by the driver suddenly and violently starting the automobile truck while the plaintiff, with the driver's knowledge, was in a position of peril.

Corpus-Juris Cyc. References: **Appeal and Error,** 3 C. J., Section 881, p. 978, n. 38; Section 891, p. 981, n. 74. **Motor Vehicles,** 42 C. J., Section 861, p. 1102, n. 94; Section 867, p. 1107, n. 48; Section 975, p. 1190, n. 2; Section 1133, p. 1271, n. 49; Section 1139, p. 1276, n. 14; p. 1277, n. 16; Section 1142, p. 1278, n. 49. **Negligence,** 29 Cyc., p. 530, n. 15.

Appeal from Circuit Court of City of St. Louis.—*Hon. Claude O. Pearcy,* Judge.

Reversed and remanded.

*Foristel, Mudd, Hezel & Habernicht* for appellant.

(1.) Instruction 4 wholly disregarded the grounds of contributory negligence charged upon the plaintiff in defendant's answer, but told the jury that if plaintiff could recover they must find "that the plaintiff did not directly contribute to such accident by any negligence or want of prudence or lack of ordinary care on his part, and if the jury shall find from the evidence that the injury was caused in any degree by want of ordinary care or caution on the part of

plaintiff, then your verdict must be for the defendant.'' This was error and was prejudicial to defendant's case. Carr v. City of ·St. Joseph, 225 S. W. 922; Benjamin v. Railroad, 245 Mo. 598; Beave v. Transit Co., 212 Mo. 331; Harrington v. Dunham, 273 Mo. 414; Miller v. Engle, 185 Mo. App. 558; Hereford v. Railways Co., 220 S. W. 899; Malone v. Railways Co., 232 S. W. 782; Hill v. Johnson, 249 S. W. 138; Tri State Fruit Growers' Association v. Railway Co., 264 S. W. 445. (2) Defendant's instruction numbered 5 erroneously defines the term ''scope of duty'' and then directs a verdict for the defendant ''unless you further find that said driver was acting within the scope of his employment as defined in this instruction.'' Garretson v. Duenckel, 50 Mo. 104; Wahl v. Transit Co., 203 Mo. 266; Whiteaker v. Railways Co., 252 Mo. 459; Houck v. Rys. Co., 116 Mo. App. 570; Shamp v. Lambert, 142 Mo. App. 573; Galba v. Payne, 253 S. W. 137. (3) The court erred in giving Instruction 6 on behalf of defendant submitting to the jury the theory of accident as the cause of plaintiff's injuries. The evidence showed clearly that the plaintiff's injuries were caused either by defendant's negligence or by the plaintiff's negligence, or by the combined negligence of both plaintiff and defendant. The cause of plaintiff's injury was not unknown. Beave v. Transit Co., 212 Mo. 355; Beard v. Railroad Co., 272 Mo. 142; Zeis v. Brewing Assn, 205 Mo. 651; Turnbow v. Dunham, 272 Mo. 53; Simon v. Rys. Co., 178 S. W. 449; Wise v. Transit Co., 198 Mo. 546; Felver v. Cen. Ry. Co., 216 Mo. 195; Lamar v. Salt Co., 242 S. W. 691; Nehring v. Stationery Co., 191 S. W. 1054; Head v. Lumber Co., 281 S. W. 441.

*Bryan, Williams & Cave* for respondent.

(1) Appellant's motion for new trial is insufficient to authorize this court to review alleged error in the instructions given at the request of defendant. Secs. 4029, 1267, 1512, R. S. 1919; Whittlesley's Missouri Practice, sec. 383, p. 473; Wampler v. Railroad Co., 269 Mo. 464; State v. Rowe & Sanders, 271 Mo. 88; Sweet v. Maupin, 65 Mo. 65; Carver v. Thornhill, 53 Mo. 283; Maplegreen Realty Co. v. Mississippi Valley Trust Co., 237 Mo. 350; Polski v. City of St. Louis, 264 Mo. 458. (2) Plaintiff's petition fails to state a cause of action. (a) Because it appears upon its face that at the time plaintiff was injured the driver of defendant's truck was not acting within the scope of his employment. Barker v. Dairymen's Milk Products Co., 205 Ala. 470; Kalmich v. White, 95 Conn. 568; Waller v. Southern Ice Co., 144 Ga. 695; Collins v. Baking & Ice Cream Co., 226 Ill. App. 124; Scott v. Coal Co., 153 Ill. App. 103; Collins v. Chicago, 187 Ill. App. 30; Dougbert v. Ry. Co., 137 Iowa, 257; Driscoll v. Scanlon, 165 Mass. 348; Hughes v. Storage & Transfer Co., 269

Pa. 222; Seidl v. Knop, 174 Wis. 397; Walker v. Fuller, 223 Mass. 566; Dover v. Mayes Mfg. Co., 157 N. C. 324; Christie v. Mitchell, 93 W. Va. 200; Rolfe v. Hewitt, 227 N. Y. 86; Goldberg v. Condensed Milk Co., 227 N. Y. 465; Fiocco v. Carver, 234 N. Y. 219; Gruber v. Transfer Co., 165 Pac. 491; McQueen v. Storage Co., 166 Pac. 626; Fry v. Public Utilities Co., 183 N. C. 281; Nelson v. Traction Co., 276 Pa. St. 178; Perrin v. Lumber Co., 276 Pa. St. 8; Lafferty v. Armour, 272 Pa. St. 588; Higbee v. Jackson, 101 Ohio St. 75; Mahler v. Stott, 129 Mich. 614; Schulwitz v. Lumber Co., 126 Mich. 559; Wilkins v. Coal Co., 79 N. H. 335; Foster Herbert Cut Stone Co. v. Pugh, 115 Tenn. 688; Zampella v. Fitzhenry, 97 N. J. L. 517; Kiernan v. Ice Co., 74 N. J. L. 175; Karas v. Burns Bros., 94 N. J. L. 59; Gamble v. Uncle Sam Oil Co., 100 Kan. 74; Armstrong v. Sumne & Ratterman Co., 278 S. W. 111; Stipetich v. Stove Co., 218 S. W. 964; Anderson v. Nagel, 214 Mo. App. 124; Guthrie v. Holmes, 272 Mo. 215. (b) Because, even though it be conceded for the purpose of argument that the driver of defendant's truck was acting within the scope of his employment when plaintiff was injured, there is no allegation that the driver willfully, wantonly or recklessly injured plaintiff, which was the only duty which this defendant owed the plaintiff. Lafferty v. Armour, 272 Pa. 588; Perrin v. Glasport Lumber Co., 276 Pa. 8; Christie v. Mitchell, 93 W. Va. 200; Higbee v. Jackson, 101 Ohio St. 75; Oatman v. Ry. Co., 304 Mo. 38; Stipetich v. Stove Co., 218 S. W. 964. (c) Because, further conceding that under the humanitarian rule, the servant's failure to use ordinary care may subject the master to liability for injuries to the servant's invitee, the petition does not contain sufficient allegations to state a cause of action under this doctrine. Oatman v. Ry. Co., 304 Mo. 38; Roberts v. Southern Pac. Railroad, 166 Mo. App. 639; Stewart v. Mo. Pac. Railroad, 308 Mo. 383; Banks v. Morris & Co., 302 Mo. 254; State ex rel. v. Trimble, 300 Mo. 92. (3) The judgment should be affirmed because there was insufficient evidence to support a verdict in favor of plaintiff. Oatman v. St. Louis Southwestern Ry. Co., 304 Mo. 38; State ex rel. v. Trimble, 300 Mo. 92; Banks v. Morris & Co., 302 Mo. 254; Straub v. Laclede Gas Light Co., 287 S. W. 1061; Stewart v. Mo. Pac. Railroad, 308 Mo. 383. (4) The giving of defendant's Instruction 4, if error, was harmless error and would not warrant this court in reversing the judgment. State ex. rel. v. Allen, 291 Mo. 206; Jablonowski v. Modern Cap Mfg. Co., 251 S. W. 477; Roman v. King, 268 S. W. 414; Leimbach v. United Railways Co., 206 Mo. App. 179; Riley v. City of Independence, 258 Mo. 671, 683; Laycock v. United Railways Co., 280 Mo. 344. (5) Defendant's Instruction 5, although erroneous as an abstract statement of law, was correct in its application to the particular facts of this case. Cases cited above. (6) The giving of defendant's In-

struction 6 did not constitute reversible error, although the instruction might properly have been refused.  Simon v. St. Ry. Co., 178 S. W. 449; Gunn v. United Railways Co., 220 Mo. 517.

RAGLAND, J.—Action for personal injuries alleged to have been negligently caused by defendant.

On the 29th day of October, 1920, one Reinert, a servant of the defendant corporation, was, pursuant to his employment, driving one of defendant's electric trucks eastwardly along Bremen Avenue in the city of St. Louis, hauling the products of its main plant at 20th and Bremen to its cold-storage plant at Broadway and Bremen.  The driver sat in a cab which was open on both sides and which was about four and a half feet from the ground.  On the side of the truck there was a step, "a small step like on a buggy, round and flat and made out of iron."  There was also a handhold on the side of the cab—"something like on a street car."  As the truck was proceeding eastwardly, as just stated, plaintiff, a boy about fifteen years of age, was walking along the south side of Bremen Avenue, going in the same direction but some distance in advance of the truck.  The truck was moving at the rate of six or eight miles an hour and overtook him.  As to what then occurred plaintiff testified:

"When I saw this truck I turned around and walked out in the street and held up my hand for the driver to stop.  At that time he was about six or seven feet, maybe more, west of me, coming towards me.  The driver slowed down.  As I held out my hand the truck was coming down—it slowed down and came to a stop.  I put my foot on the truck and got hold of that rail and wanted to get on, when the truck started suddenly and I was thrown under the wheels.  When the truck stopped it was right opposite me, right in front of me, when it came to a stop. . . . After the machine came to a stop I grabbed hold and put my foot on the step, and I was getting on when the truck started up, pulling myself up.  Then the truck started suddenly.  I cannot say exactly which hand I had hold of the hand bar; I think it was the right hand.  When the truck started up my foot slipped off that there thing and went under the front wheel and it passed over me right here.  When the truck started up all my weight was on the step.  I couldn't say where my other leg was or how high I had gotten that.  When the truck started up my foot slipped off and I went down together."

Plaintiff's testimony was in the main corroborated by that of Reinert, the driver.  The latter testified in part:

"When I saw this boy come out into the street I just kept running.  I did not bring my car to a stop at that present time.  I did not bring it to a full stop when he caught hold of it; I think after he had hold

I stopped, and when he raised himself up, I think, I throwed the power on again, because I thought it was safe.''

Plaintiff sustained severe and permanent injuries.

Defendant's witnesses testified that the truck never stopped or even slowed down, but that plaintiff ran after it, and upon overtaking it grasped the handhold and endeavored to pull himself up into the cab. Some of them said plaintiff stepped up on the hub of the front wheel; some that his foot slipped off the step; and others that he entirely missed the step.

The petition alleges:

''That said chauffeur, to-wit, defendant's said agent and servant in charge of and operating said auto truck, as aforesaid, slowed down said auto truck and invited plaintiff to get on the same, and then and there, and for the purpose of allowing the plaintiff to get on the said truck, brought the same to a stop or a very slow movement; that plaintiff then and there proceeded to get on said auto truck for the purpose of accepting the invitation of defendant's said agent, servant and chauffeur to ride on said truck, and while plaintiff was in the exercise of due care for his own safety, and while he was then and there, at the invitation of said chauffeur, in the act of boarding said auto truck and while he had one foot on the step at the side of said truck, and was in the act of climbing upon and to the seat of said auto truck with the defendant's said agent, servant, and chauffeur in charge of and operating said auto truck as aforesaid, and before he had a reasonable time and opportunity to complete his act of boarding said auto truck and climbing upon and to the seat thereof, and so in a position of peril should the truck be then suddenly and violently started forward, the defendant, by and through its said agent, servant and chauffeur then and there in charge of and operating said truck, carelessly and negligently and with knowledge of plaintiff's said position of peril, caused said auto truck to start forward with a sudden and violent motion, lurch, jerk and movement, without giving plaintiff any warning of his intention to do so, and thereby and by said motion, lurch, jerk and movement negligently caused plaintiff to be thrown with great force and violence from said auto truck to the ground and street there and under the wheels of said auto truck and to be hit, struck and run against, upon and over by said wheels of said truck, whereby, and as a direct and proximate result of the negligence of defendant, its said agent and servant, as aforesaid, plaintiff was caused to sustain the following severe and permanent injuries. . . .''

The answer following a general denial is this:

''Defendant says that the injuries, if any, to the plaintiff were due to his own carelessness and negligence directly contributing thereto, in this, to-wit:

"1. In negligently and carelessly and without exercising any care whatsoever for his own safety attempting to board or jump upon a moving automobile truck;

"2. In negligently and carelessly and without exercising any care whatsoever for his own safety attempting to board or jump upon a moving truck by stepping upon the hub of the moving wheel and slipping therefrom to the ground;

"3. In negligently and carelessly and without exercising any care whatsoever for his own safety attempting to board or jump upon a moving truck by attempting to jump upon the step of said truck, and carelessly and negligently failing to do so."

By defendant's Instruction 4 the court told the jury that before they could find for plaintiff they must find that he "did not directly contribute to such accident by any negligence or want of prudence or lack of ordinary care on his part," and that if his "injury was caused in any degree by want of ordinary care or caution" on his part, their verdict must be for defendant.

The jury returned a verdict for defendant. From the judgment given in accordance therewith plaintiff appeals.

Appellant assigns as error the giving of three instructions asked by defendant: Number 4 above referred to; Number 5, defining the terms "scope of duty;" and Number 6, an "accident" instruction. Respondent by way of rejoinder says: (1) that the motion for a new trial is insufficient to authorize this court to review alleged errors in the instructions; (2) that with respect to both his pleading and proof plaintiff failed to make a case for the jury, and for that reason is in no position to complain of the instructions; and (3) that the instructions, even though they may be technically erroneous, were not prejudicial, the facts considered.

I. The assignment in plaintiff's motion for a new trial referring to instructions given at the request of defendant is as follows:
"Fourth, the court, over the objection and exception
**General** of the plaintiff, gave to the jury at the request and on
**Assignment.** behalf of the defendant, illegal, improper and erroneous instructions." It is said that this assignment is so indefinite that there is nothing before this court for review.

"A motion for a new trial which contains no reference (either general or specific) to the error complained of, is not sufficient; but it is sufficient to make a general assignment of error in the motion, both as to the reception and exclusion of evidence, and the giving and refusal of instructions." [Wampler v. Railroad, 269 Mo. 464, 465.]

Such is the firmly settled rule so far as civil cases are concerned. "The question is not an open question here, and has not been since the Wampler case." [State ex rel. v. Ellison, 282 Mo. 660, 662.]

A different rule obtains in criminal cases, it seems, because of a re-cently enacted statute. [State v. Standifer, 289 S. W. 856.] Re-spondent's contention under this head is disallowed.

II.: 1. Respondent advances a number of propositions in its ef-forts to demonstrate that the petition does not state a cause of action. The first of these is that. the petition discloses on its face that at the time plaintiff was injured the driver of the defendant's truck was not acting within the scope of his employment. It is of

**Negligence of Master.** course well settled that a servant has no implied au-thority to invite or permit third persons to ride upon a vehicle in his charge; that, unless the master has expressly au-thorized the issuance of such an invitation or the granting of such permission, the servant's act in so doing is not a mere deviation from instructions, but a complete abandonment of the master's business; that a person so riding upon the vehicle is an invitee as to the servant, but a trespasser as to the master; and that the master cannot be subjected to liability for an injury to the servant's invitee, unless the act of the servant which caused the injury was committed while he was acting within the scope of his employment. It is equally well settled by the weight of judicial decisions, "that, if after the unau-thorized act of the servant and the violation of his duty to his master, and when acting in the general scope of his authority, he becomes guilty of wanton, wilful or reckless negligence in the operation of the machine or vehicle in his charge and injuries result therefrom to his invitee or licensee, the master is liable therefor, such operation being regarded as done within the general scope of his authority." [Christie's Admr. v. Mitchell, 93 W. Va. 200, 205.] In the instant case when the driver of the truck *began to slow down* so that plain-tiff could get on, at that very moment he abandoned his master's business. When did he resume it? That is the crucial question. Ad-dressing themselves to that question, respondent's counsel say: "The invitation (implied from the slowing down or stopping of the truck) was admittedly beyond the scope of the driver's duties. We submit that the driver's acts directly in pursuance and necessary to the con-summation of the unauthorzed invitation were part and parcel thereof. The plaintiff has clearly. and accurately stated that his injury oc-curred while he was in the act of accepting the unauthorized invita-tion of the driver . . . Liability against this defendant cannot be predicated upon an act of negligence of the driver committed be-fore his unauthorized act was completed and his unauthorized pur-pose accomplished by the plaintiff's 'completing his act of boarding the truck.'" The argument results, we think, from confusion of thought. Plaintiff's act in boarding the truck and that of the driver in starting it were wholly unrelated so far as the purpose entertained

respectively by each was concerned. The driver stopped the truck to enable the plaintiff to climb upon it. But what was his purpose in starting it? Before he overtook plaintiff he was driving along the street presumably in the prosecution of his master's business. As he proceeded he came upon plaintiff and thereupon he stopped the truck or brought it to a very slow movement in order that plaintiff might get on. Presently he started the truck or accelerated its movement— for the purpose of taking plaintiff on a ride or carrying him to a destination of his own? Not at all. The petition alleges by intendment, and that method of construction is permissible after the supporting proof is in, that the putting of the truck in motion or increasing its speed was for the purpose of again taking up the master's business at the point where it had been left off. The master's acts in relation to plaintiff may be described in this way: The master while driving his truck along the street in the furtherance of his own affairs saw plaintiff standing with upraised hand in indication that he wished to get upon the vehicle; at that instant the master left the scene, and during the interval of his absence the truck stopped or came to a very slow movement. Upon his return he saw the plaintiff with one hand grasping the handle bar on the side of the cab, one foot on the step and the other off the ground, in the act of pulling himself up into the cab, but notwithstanding plaintiff's position the master suddenly and violently started the truck forward. The same thought finds juristic expression in Stipetich v. Mfg. Co., 218 S. W. 964, 966-67, a case involving facts very similar to those presented on the record here. It is there said:

"The act of negligence upon which liability is predicated is not the driver's invitation to the boy to get on and take a ride, but it was his act of suddenly and violently starting the truck when he knew the boy was in danger and would likely be hurt thereby. The evidence concerning the driver's invitation was merely to explain the boy's presence at the truck, attempting to get on. It showed how he happened to be there, but the sudden starting of the truck while the boy was attempting to climb on was the cause of his death, and if the driver knew of his situation when he started the truck it was an act of culpable negligence. He was clearly acting within the scope of his employment in starting and driving the truck. His invitation to ride was an act beyond the scope of his authority, and hence, as to the driver's employer, the boy was in law a trespasser, or occupied that status. But, even so, the driver in the subsequent prosecution of his master's business owed the boy the duty of using reasonable care not to injure him after he was discovered and known to be in a place of imminent danger or peril." [See also Galba v. Payne, 253 S. W. 137.]

For the reasons indicated we think it clearly appears from the petition that the alleged negligent act of the driver of the truck was done within the scope of his employment; the plaintiff's evidence, if true, showed it beyond question.

2.   It is further contended by respondent that the petition does not state a cause of action for this reason: it attempts to plead primary negligence, but fails to allege that the act of the truck driver which caused injury to plaintiff, a trespasser, was wilfully or wantonly or recklessly done.   In support of the proposition that the petition attempts to plead primary negligence this argument is advanced: "The humanitarian doctrine presupposes that a present danger already exists, the consequences of which the defendant has the power to avoid by doing or refraining from doing some act which he fails to do.   Primary negligence consists in the doing of some act which under the circumstances might reasonably be expected to cause injury.   The fundamental difference between primary negligence and negligence under the humanitarian doctrine is the present existence of the perilous situation.   If it is necessary for the defendant to commit a negligent act to create the peril the doctrine is not applicable.   Every negligent act creates a position of peril.   But if the act which creates the peril is also the act which causes the injury it is a case of primary negligence."   As to this it is sufficient to say that "perilous position" as used in defining and applying the "humanitarian rule" is a relative term.   The position of plaintiff while in the act of climbing onto the truck, considered with reference to its standing still, or moving slowly, was no doubt a comparatively safe one, but with reference to the truck's being "suddenly and violently started forward" it was extremely perilous.   There was therefore a "present existence" of plaintiff's perilous position *before* the driver started the truck. [See Hall v. Railroad, 219 Mo. 553, 589.]   And in view of that the truck driver's failure to exercise ordinary care, as alleged, was equivalent to wilfulness, wantonness or recklessness.   [Everett v. Railroad, 214 Mo. 54, 93-4; Cole v. Railway, 121 Mo. App. 605, 611, et seq.]

**Pleading Recklessness.**

Under its contention that there was a failure of proof, respondent asserts that there was no evidence of any wanton, wilful or reckless conduct.   With respect to that it is enough to say that there was substantial evidence tending to support the allegations of the petition. For the reasons indicated in the preceding paragraph that was sufficient to take the case to the jury.

III.   Instruction 4 given for defendant is criticised by appellant on these grounds:   (1) that it did not confine the jury to a consideration of the specific acts of negligence pleaded in the answer; and

(2) that it directed the jury to find for defendant, if plaintiff's injury was caused *in any degree* by want of care on his

**Instruction:**
**Contributory**
**Negligence.**
part. Both grounds are well taken if contributory negligence was available as a defense at all. [Carr v. City of St. Joseph, 225 S. W. 922; Benjamin v. Railway, 245 Mo. 598; Beave v. Transit Co., 212 Mo. 331; Harrington v. Dunham, 273 Mo. 414; Hill v. Johnson, 249 S. W. 138.] But it is clear that it was not. The negligence charged is that the defendant's driver suddenly and violently started the truck forward while the plaintiff, as he knew, was in a perilous position. All of the alleged acts of negligence on the part of the plaintiff occurred before he got into the perilous position. What occasioned or brought about that situation is wholly without influence in so far as defendant's liability is concerned, if its servant was guilty of the negligence charged. In other words, the case pleaded is one under the humanitarian rule and contributory negligence is not a defense. [Banks v. Morris, 302 Mo. 254.]

Under any view the giving of the instruction was reversible error.

IV.  Instruction numbered 5 advised the jury "that by the words 'scope of duty' is meant the particular duties which the servant is employed to perform and what, with the knowledge and approval

**Scope of**
**Employment.**
of his employer, that servant actually did perform when engaged in the service of his employer." On the facts of this case the instruction gave the jury no assistance, but on the contrary was calculated to mislead them.

The "accident" instruction was in the usual form. It could have served only to divert the minds of the jury from the real issue in the

**Accident.**
case, namely, whether plaintiff's injury was caused by the driver suddenly and violently starting the truck forward while plaintiff was in a position of peril of which the driver was at the time fully aware.

The judgment is reversed and the cause remanded. All concur.