**Charles Louis EVANS, (Plaintiff) Respondent,**

**v.**

**James LANDOLT, a Minor, (Defendant) Appellant.**

**No. 50952.**

Supreme Court of Missouri.

Division No. 1.

March 8, 1965.

Rehearing Denied April 12, 1965.

**16**

Roberts & Roberts, by Raymond R. Roberts, Farmington, for respondent.

E. L. McClintock, Jr., Flat River, for appellant.

PAUL VAN OSDOL, Special Commissioner.

Action for $28,000 for personal injuries and property damage alleged to have been sustained when the eastbound automobile driven by defendant on East Main Street in Flat River collided with the automobile driven by plaintiff which had moved westwardly on East Main and had turned left off of East Main onto a parking lot south of the street.

At the conclusion of the trial of this case, April 15, 1964, a jury returned a verdict for defendant, but the trial court sustained plaintiff's motion for a new trial on the specified ground "that the Court believes the verdict and judgment thereon to be contrary to the greater weight of the credible evidence in this case." Defendant has appealed from the new-trial order, and herein urges the one point that the trial court "erred in sustaining plaintiff's motion for a new trial on the ground that the verdict was against the greater weight of the evidence for the reason that plaintiff failed

to make a submissible case on the two theories of negligence which were submitted and the trial court's ruling was not a judicial exercise of discretion but was an arbitrary exercise of authority."

 It is within the trial court's discretion to grant a new trial on the ground the verdict of the jury was against the weight of the evidence. However, such discretion was to be judicially, not arbitrarily exercised. It has been said that, in determining the question whether the trial court (in granting a new trial to plaintiff on the ground the verdict was against the weight of the evidence) was acting in the exercise of its judicial discretion, the appellate court will endeavor to ascertain if there was sufficient substantial evidence to sustain a verdict for plaintiff, the party to whom the new trial was granted. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, and cases therein cited; Dawson v. Scherff, Mo.Sup., 281 S.W.2d 825; Hendershot v. Minich, Mo.Sup., 297 S.W.2d 403; Kiburz v. Loc-Wood Boat & Motors, Inc., Mo.Sup., 356 S.W.2d 882; Madsen v. Lawrence, Mo.Sup., 366 S.W.2d 413; Williams v. Cass, Mo.App., 372 S.W.2d 156; § 510.330 RSMo 1959, V.A.M.S.

East Main Street in Flat River is paved with concrete twenty feet wide with graveled-surface shoulders on either side. A building occupied by the Caldwell Funeral Home fronts northwardly. The front of the building is approximately eighty feet south of the south edge of the pavement. The area between the building and the pavement is used by the Caldwell funeral service as a parking lot for motor vehicles. The motor-vehicular collision involved in this case occurred near the south edge of the pavement in the northerly portion of the parking lot.

A root beer stand is located on the north side of East Main approximately twelve hundred feet west of the place of collision. The stand is on a hill referred to by the witnesses as "Federal Hill." The elevation of East Main declines nearly thirty-five

feet in the stated approximate distance between the root beer stand and the place where the collision occurred. There is nothing to obstruct the view from Federal Hill eastwardly down East Main to the place of the collision.

At about ten thirty in the morning of April 21, 1963, plaintiff had been proceeding westwardly on East Main. He was intending to go to the funeral home. He had been driving twenty to twenty-five miles per hour. Plaintiff testified that, when he was about a block and a half east of where he turned left, he saw defendant's eastbound car which was then three blocks (or a little more) west of the place where plaintiff made his turn. It "didn't look to me like he was going too fast." Prior to getting up to the point where plaintiff turned, plaintiff turned on the left-turn signal light; and, in his nearer approach, plaintiff reduced speed to five or ten miles per hour, allowing another vehicle on the south lane to pass eastwardly. A witness for plaintiff said the left-turn light was turned on when plaintiff's vehicle was approximately half a block from where plaintiff commenced to turn left. As plaintiff commenced to make the left turn across the south (eastbound) lane, he glanced up and again saw defendant's vehicle about a block and a half away. Plaintiff continued to turn left at an angle of about forty-five degrees and got off the pavement and onto the parking lot when he was hit. Plaintiff had just seen that defendant's car, moving sixty to seventy miles per hour, had moved six or seven feet off of (south of) the pavement. The front of defendant's automobile struck the right front side of plaintiff's automobile.

Skid marks indicated defendant's vehicle had been braked for a distance of seventy-six feet. The "last twenty feet of the skid marks" left the pavement and continued to the point of collision. Debris ("such as dirt and what have you from underneath the fenders and front ends of the cars") was approximately six feet south of the south edge of the pavement.

Defendant testified that, driving eastwardly on East Main, he had slackened to a low speed when he was near the root beer stand; and then, in moving farther eastwardly down Federal Hill, defendant "accelerated." Defendant was not able to estimate the highest speed his vehicle moved on down the declining grade to the point of collision. When he saw plaintiff making the left turn, defendant "hit the brakes" and held them on, and his car "drifted" to the right. Defendant had seen plaintiff's car, but he hadn't seen plaintiff give a left-turn signal. Defendant said he was seventy-five to ninety feet from plaintiff's vehicle when plaintiff started to turn left. Defendant didn't "turn the wheels" and pass to his left of plaintiff's car, although there was no westbound traffic on the north lane at the time; he "couldn't." Defendant entered a plea of guilty in the police court of Flat River. The charge was careless and reckless driving.

As a preliminary to our discussion of the evidence, we shall dispose of argument in defendant's brief that, in the course of the trial, certain stated rulings, statements, and comments by the trial judge, if they were not individually erroneous, were, at the least, strongly indicatory of partiality in favor of plaintiff's case and, at worst, an outright prejudice against defendant. So it seems defendant urges in argument that partiality or prejudice on the part of the trial judge affected or actuated the action of the trial court in sustaining the new-trial motion.

We have examined the entire transcript, and, particularly, we have analyzed, in their trial settings, the rulings, statements, and comments complained of by defendant. We have the opinion the parties, plaintiff and defendant, were accorded a fair and impartial trial; and certainly we see no real or apparent basis in the record for inferring that any partiality or prejudice affected the trial court's action in granting a new trial.

But, says defendant, "to complete the picture," it must be pointed out that the

trial court committed what defendant says is obvious error by permitting plaintiff to submit his case by instructions based, says defendant, on the MAI but which instructions, again says defendant, do not meet the requirement of "either the new or old instruction."

In this connection, we note the trial court submitted plaintiff's case by the verdict-directing Instruction No. 1, as follows—

"Your verdict must be for the Plaintiff if you find and believe:

"First, Defendant either: drove off the traveled portion of the road on to the parking lot, or failed to maintain control of his vehicle; and

"Second, Defendant conducting himself in any one or more of the respects submitted in Paragraph First was negligent, and

"Third, as a direct result of such negligence Plaintiff sustained damage,

"Unless you believe Plaintiff is not entitled to recover by reason of Instructions Nos. 4 and 5."

(Instruction No. 4 submitted contributory negligence of plaintiff in failing "to give a timely signal of his intention to turn left." Instruction No. 5 submitted contributory negligence of plaintiff in attempting to turn left on the hypothesis that plaintiff by the exercise of the highest degree of care "could have seen the vehicle driven by defendant approaching * * * so near and at such speed as to constitute an immediate hazard of collision * * *.")

Herein, as noticed supra, the sole point relied on by defendant in his brief is error in sustaining the new-trial motion for the stated reason that plaintiff failed to make a submissible case "on the two theories of negligence which were submitted." Although defendant in his argument asserts the instructions given in behalf of plaintiff do not meet the requirements of either

the new or old instructions, defendant does not develop and support the assertion; nor does he say in what respects the instructions were erroneous (other than to say that the one of the two theories of negligence submitted in Instruction No. 1 is inconsistent with the other). Nevertheless, we observe that the submissions by hypotheses of theories of the type—"did not have his automobile under such control that he could stop or turn it aside and thereby avoid the collision"—frequently have been criticized. See Kitchen v. Wilson, Mo.Sup., 335 S.W. 2d 38; and quoting from Myers v. Buchanan, Mo.Sup., 333 S.W.2d 18, "Lack or loss of control is usually the result of some antecedent negligent act or omission which is the essential fact that should be hypothesized." The specific hypotheses of the essential negligent acts or omissions constituent of lack of control is aptly suggested in the Kitchen case. And see also Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872.

We think the doctrine of these cases is applicable to the hypothesis in Paragraph First of Instruction No. 1—"failed to maintain control of his vehicle." And concerning the alternative hypothesis in Paragraph First of the instruction—"drove off the traveled portion of the road on to the parking lot," it appears that the trial court at plaintiff's instance may have been attempting a res ipsa loquitur submission which, under the pleadings and the evidence introduced by plaintiff, had no place in the submission of plaintiff's case. And any contention that the one of the two alternative hypotheses in Paragraph First (or that the one "of the two theories of negligence which were submitted," as defendant puts it) is inconsistent with the other is of no moment in this case.

■ In his petition, plaintiff has specifically averred, inter alia, that defendant was negligent in driving "at a high, excessive and unlawful rate of speed" and in failing "to maintain a vigilant lookout"; it is seen there was substantial evidence supporting these allegations of specific negligence.

The alternative hypotheses submitted in Instruction No. 1 were insufficient in submitting essential fact issues. The essential facts—negligent act and omission—were not set forth and submitted for the jury-fact decision. We would suppose there was a misdirection. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W. 2d 59, id., Mo.App., 243 S.W.2d 539.

In the situation herein upon appeal we have the opinion there should be a retrial with instructions submitting the essential factual issues.

■ In the Girratono case, supra, as in our case, plaintiff had pleaded the particular or specific acts or omissions constituting negligence as distinguished from the "*result*" of those pleaded particular negligent acts or omissions which were supported by substantial evidence but were not submitted. In the Girratono case the verdict was for plaintiff and, upon defendant's appeal from the ensuing judgment, there was reversal *and remand*.

As strongly intimated, supra, our study of the record discloses the factual theories of defendant's negligence in driving at an excessive speed and in failing to keep a careful lookout were the "essential facts"— specific negligent act and omission—and we believe they were supported by substantial evidence exemplified by evidence we have stated supra. And it would seem that the evidence in this case tending to support the specific negligence of defendant in driving at an excessive speed and in failing to keep a careful lookout also tended to refute or disprove the evidence tending to show contributory negligence of plaintiff as submitted and answers any contention herein that plaintiff was guilty of contributory negligence as a matter of law. We have no doubt that in granting a new trial on the specified ground that the verdict was against the greater weight of the evidence, the trial court actually or in fact weighed the evidence tending to prove and to disprove these stated essential fact issues. This, even though such issues were not but should have been specifically and plainly submitted. And, in this case, in view of all we have said supra, we have no disposition to reverse or change the effect of the new-trial order.

■ Parenthetically and in conclusion, we say that if, as defendant asserts, the trial court at plaintiff's instance was attempting to use the MAI in formulating Instruction No. 1, plaintiff and the trial court failed to use the alternative submissions—"failed to keep a careful lookout, or drove at an excessive speed"; and plaintiff and the trial court also failed to note the absence of any MAI approved submission of "failed to maintain control of his vehicle." As to the alternative submission in Paragraph First of the instruction—"drove off the traveled portion of the road on to the parking lot," if such alternative submission is considered an attempted res ipsa loquitur submission and even if we were to accept the unsupportable proposition that plaintiff made out a submissible res ipsa loquitur case, plaintiff was not entitled to avail of the res ipsa loquitur theory of submission because of his pleading and proof of specific negligence. Plaintiff and the trial court are not saved by using res ipsa loquitur language from the MAI, for the introduction to MAI makes it abundantly clear that the MAI instructions are correct only where applied to the appropriate fact situation.

The order granting a new trial should be affirmed.

It 's so ordered.

PER CURIAM.

The foregoing opinion by PAUL VAN OSDOL, Special Commissioner, is adopted as the opinion of the Court.

All concur.