**Michael O. DAY, by his next friend, Roland Day, Plaintiff-Respondent,**

v.

**Gail MAYBERRY, a minor, by her guardian ad litem, Imogene Mayberry, Defendant-Appellant.**

No. 8629.

Springfield Court of Appeals.

Missouri.

Sept. 13, 1967.

Motion for Rehearing or to Transfer Denied Oct. 16, 1967.

Application to Transfer Denied Dec. 11, 1967.

7. Cf. Locomotive Engineers Mutual Life and Accident Assn. v. Locke, 251 App. Div. 146, 295 N.Y.S. 689, affirmed 277 N.Y. 584, 13 N.E.2d 781.

Buerkle & Lowes, Jackson, for defendant-appellant.

Dalton, Treasure & Bullard, Kennett, for plaintiff-respondent.

STONE, Presiding Judge.

For injuries alleged to have resulted from a bizarre accident in Kennett, Missouri, about 9:30 P.M. on June 1, 1965, plaintiff Michael O. Day, then 16 years of age, instituted this action in which he sought damages of $10,000 from defendant Gail Mayberry, then also 16 years of age. Following entry of judgment upon a unanimous jury verdict for defendant, plaintiff's timely motion for new trial was sustained on the sole ground that the verdict was against the weight of the evidence. V.A. M.R. Rule 78.01. On this appeal by defendant, her contentions are (a) that "a submissible case was not presented because the plaintiff was an *undiscovered trespasser* on the defendant's auto to whom no duty was owed" and (b) that, "if it be deemed the plaintiff was either a discovered trespasser or a licensee or an invitee," he "was guilty of contributory negligence as a matter of law" or "assumed the risk as a

matter of law." (All emphasis herein is ours.)

■ Some preliminary references to relevant legal principles may be helpful. As instant plaintiff emphasizes, a trial court is vested with broad inherent discretion to grant one new trial on the ground that the verdict is against the weight of the evidence. Frager v. Glick, Mo., 347 S.W.2d 385, 387(1); State ex rel. State Highway Com'n. v. Belvidere Development Co., Mo., 315 S.W.2d 781, 784(7). But that discretion is to be exercised judicially, not arbitrarily [Evans v. Landolt, Mo., 389 S.W.2d 15, 16(1); Madsen v. Lawrence, Mo., 366 S.W. 2d 413, 416(5)]; and repeated pronouncements have made it clear that the test as to whether there has been an arbitrary exercise of such inherent discretion is whether there was substantial evidence to have supported a verdict for the party to whom the new trial was granted. State ex rel. State Highway Com'n. v. Vaught, Mo., 400 S.W.2d 153, 155; Robinson v. Wampler, Mo., 389 S.W.2d 757, 759(2, 3); Dawson v. Scherff, Mo., 281 S.W.2d 825, 831; Williams v. Cass, Mo.App., 372 S.W.2d 156, 158(3), and cases cited in note 3.

■ Since plaintiff abandoned all other pleaded grounds of negligence by submitting his case on the assignments that "defendant placed the vehicle in motion at a high rate of speed" and "defendant drove at an excessive speed" [Guthrie v. City of St. Charles, 347 Mo. 1175, 1182, 152 S.W.2d 91, 93(1); Brooks v. Stewart, Mo., 335 S.W.2d 104, 105, 81 A.L.R.2d 508; Haire v. Stagner, Mo.App., 356 S.W. 2d 305, 308(2)], our inquiry with respect to the sufficiency of the evidence should be confined to the two submitted assignments. Burnett v. St. Louis Public Service Co., Mo., 337 S.W.2d 921, 923(4); Herr v. Ruprecht, Mo., 331 S.W.2d 642, 647(2); Weathers v. Falstaff Brewing Corp., Mo. App., 403 S.W.2d 663, 666(5); Graham v. Conner, Mo.App., 412 S.W.2d 193, 197–198(2), and cases cited in note 3. In that inquiry and also in considering the additional issues raised by defendant as to whether or not plaintiff was contributorily negligent or assumed the risk of injury as a matter of law, we must consider the evidence in the light most favorable to plaintiff, must accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiff. Chailland v. Smiley, Mo. (banc), 363 S.W.2d 619, 623(1), 5 A.L.R.3d 288; Allman v. Yoder, Mo., 325 S.W.2d 472, 474(3); Catanzaro v. McKay, Mo., 277 S.W.2d 566, 567–568(1). Our factual review accords due deference to that basic principle of appellate review.

At the conclusion of a youth rally at a Kennett church about 9 P.M., defendant Gail Mayberry loaded three teenage companions, namely, David Haire, David Cooper and Pat Dickie, into her father's 1955 DeSoto tudor hardtop, which she was driving with his permission, and took them for a ride about town. Haire, who did not testify and whose exact age was not shown, rode in the front seat with defendant. The other couple rode in the rear seat. The Cooper youth was then 15, the Dickie girl 16. Somewhere along the route of their travel, defendant and her companions sighted and picked up a pedestrian, Don Oakley, then 17, who sat on the right side of the front seat. A few minutes later, as the DeSoto "was traveling through the high school field," some boys "yelled at it"; and defendant responded by turning around and stopping, headed north, at the east curb near the driveway into the house situate at 306 North Walter Street. Five boys, two of whom were 15 years of age, two 16, and one 18, were in the yard at that address. "They yelled and came running out, and David Haire [in the DeSoto] hollered, 'Hey, Mike,' and he [plaintiff] came running up there, all those boys did . . .." Marion Meredith, then 18, "jumped on the front of the car" and either sat "on the front right fender and part of the hood" or, as defendant's passenger-witness Pat Dickie stated, "was

on the hood of the car facing the window [windshield], up on his knees, with his hands up on the top of the car." Plaintiff, then 16, climbed onto the trunk lid of the DeSoto and, in the words of defendant's passenger-witness David Cooper, "set with his feet up under him, sort of in a squat, with his back to the back glass [rear window]." No one in the DeSoto said or did anything to invite either plaintiff or Marion Meredith to jump or climb onto the automobile, and there was no occasion for either youth to do so.

Concerning what occurred during the "few seconds" or "few minutes" or "small amount of time" the DeSoto remained stationary, we are informed only (a) by witness Ryan Goodman, one of the youths in the yard who did not jump onto the automobile, that "first they talked and they had got on the car" and (b) by witness Meredith that, after he and plaintiff had climbed onto the DeSoto, "I believe Mike [plaintiff] was the one that was talking to them, because I think he knew them, I'm not sure." Then David Haire, sitting beside defendant, told her to "floor it" and immediately thereafter, without warning of any nature, defendant "took off." As to where she had intended to go, defendant replied "I don't know, I was just going riding . . . I didn't have any place in mind . . . I didn't have any reason." With respect to Meredith's position on the hood, defendant said "I guess it was okay, he looked safe to me" and conceded that she had no objection to his riding there. Averring that she had not looked in her rear vision mirror before starting and denying any knowledge of plaintiff's position on the trunk lid, defendant responded to the inquiry whether it was "all right with you for Day [plaintiff] to be on the car" in this fashion, "if I would have known he was up there it might have been."

*Plaintiff's* evidence was to the effect that defendant "took off pretty fast" or "rather fast," "accelerated rather quickly"—"as fast as it [the DeSoto] would go," and had attained a speed estimated by two of plaintiff's witnesses at 35 to 40 miles per hour, by another at 35 miles per hour, and by a fourth at 30 miles per hour, all of which speeds were in excess of the speed limit of 25 miles per hour on Walter Street, before plaintiff "swinging his arms" and "trying to hold his balance on the back of the car" *fell* off the DeSoto, rolled on the concrete pavement, struck his head, and came to rest unconscious. *Defendant's* showing was to the effect that she "just started rolling off" and "took off normal"— "it wasn't fast at all," and that the DeSoto had attained a speed estimated by two of her witnesses at 10 to 15 miles per hour and by defendant herself as having been "at least 15 miles an hour," before plaintiff "scooted down on the back of the car" and *jumped* off. The point at which plaintiff fell or jumped off the DeSoto was about even with the driveway into the house situate at 310 North Walter on the second lot north of the house in front of which he had climbed onto the trunk lid. Those lots were "75 feet, something like that, 50 feet" in width.

■ *Of the submissibility of plaintiff's case.* Defendant's primary point that plaintiff did not present a submissible case of actionable negligence on the part of defendant is predicated on the premise that plaintiff was an *undiscovered trespasser* on the DeSoto to whom no duty was owed. On the undisputed testimony, plaintiff was indeed a trespasser, i. e., one who enters onto another's property, whether it be realty or personalty of such nature as to be subject to trespass, without any right, lawful authority, or express or implied invitation or license [65 C.J.S. Negligence § 63(3)a, p. 659; Twine v. Norris Grain Co., 241 Mo.App. 7, 15, 226 S.W.2d 415, 420(3)]; but we are unable to say, as a matter of law, that he was an *undiscovered* trespasser. True, defendant testified upon trial that she first learned that plaintiff had been on the rear of the DeSoto "when someone hollered inside the car that he had jumped." However, we recall the above-noted testimony (a) of defendant herself that, when

the DeSoto stopped in front of 306 Walter, her seatmate David Haire "hollered, 'Hey, Mike,' and he [plaintiff] came running up there," (b) of witness Goodman that, while the DeSoto remained stationary, "first they talked and they had got on the car," (c) of witness Meredith that "I believe Mike [plaintiff] was the one that was talking to them . . ." after he and plaintiff had scrambled onto the DeSoto, and (d) of witness Cooper that plaintiff climbed onto the trunk lid and sat "sort of in a squat, with his back to the back glass." Proof that a defendant saw the trespasser or had actual knowledge of his presence may be made circumstantially, even over a direct denial. 2 Harper and James, Torts, § 27.6, 1. c. 1465.

Furthermore, in the course of cross-examination as to what defendant had told her, Pat Dickie, characterized as defendant's "good friend," not only (a) acknowledged that defendant had stated the accident was her fault and "I shouldn't have took off with him on there," which, as defendant's counsel emphasize, standing alone would not necessarily have constituted an admission of *preaccident* knowledge of plaintiff's position on the DeSoto, but also (b) gave the following testimony: "Q. But you told me [plaintiff's counsel] . . . when we talked to you at school that *after Gail* [defendant] *got the car started she knew that Mike* [plaintiff] *was on the back,* didn't you? A. *Yes, sir, she did.*" Received without objection or motion to strike, the probative worth and effect of this testimony were for the jury. See particularly Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 302(9); Steeley v. Kurn, 348 Mo. 1142, 1144, 157 S.W.2d 212, 213(4). Consult Doyle v. St. Louis Merchants' Bridge Term. Ry. Co., 326 Mo. 425, 432, 31 S.W.2d 1010, 1012(4), certiorari denied, St. Louis Merchants' Bridge Terminal Ry. Co. v. Doyle, 283 U.S. 820, 51 S.Ct. 345, 75 L.Ed. 1435; In the Interest of J.L.L., Mo.App., 402 S.W.2d 629, 633–634(1); Fellows v. Farmer, Mo. App., 379 S.W.2d 842, 846(2).

Viewing the record as a whole in the light most favorable to plaintiff and according to him the benefit of all supporting inferences fairly deducible from the evidence, we are constrained to conclude that the triers of the facts reasonably could have inferred and found that defendant knew of plaintiff's position on the trunk lid prior to, and in time to have averted, his injury, in which event plaintiff's status would have been that of a *discovered* trespasser and defendant's duty to him as such would have been to use ordinary care under the circumstances not to cause him injury by any *affirmative act* on her part. McVicar v. W. R. Arthur & Co., Mo., 312 S.W.2d 805, 812–813(7), 65 A.L.R.2d 785; Stevens v. Missouri Pacific R. Co., Mo., 355 S.W.2d 122, 128–129(12); 65 C.J.S. Negligence § 63(16), p. 672; Id. § 63(7), l. c. 666; 38 Am.Jur. Negligence § 111, p. 775; 2 Harper & James, Torts, § 27.6, 1. c. 1464; 2 Prosser, Torts (2nd Ed.), § 76, 1. c. 436. Certainly, defendant's operation of the DeSoto was active or affirmative in nature. White v. Burkeybile, Mo., 386 S.W.2d 418, 423. Since defendant's assertion that plaintiff did not present a submissible case rests solely on the premise that, as a matter of law, the latter's status was that of an *undiscovered* trespasser, our conclusion that the triers of the facts reasonably could have inferred and found that he was a *discovered* trespasser is dispositive of this point. Plaintiff did present a submissible case of actionable negligence on the part of defendant. In this connection, see Bobos v. Krey Packing Co., 317 Mo. 108, 296 S.W. 157, and Stipetich v. Security Stove & Mfg. Co., Mo.App., 218 S.W. 964.

Inasmuch as this case will be for retrial, we add the caveat that our holding of submissibility should not be misinterpreted as approval of the *manner of submission* in plaintiff's verdict-directing instructions 3 and 4 patterned after MAI No. 17.01 and requiring no finding on the sharply-contested issue concerning *plaintiff's status*. As pointed out in the foreword

on "How To Use This Book" [MAI p. XXXI]: "The jury is impaneled to decide disputed issues of fact. The failure to instruct on every issue has been error, and it continues to be error . . . . A lawyer needs to know what facts must be proved to authorize a recovery, and then make sure that the verdict directing instruction hypothesizes each such element." E. g., the "Notes on Use" of MAI No. 22.05 caution that "[t]his instruction assumes that the landlord-tenant relationship is not in issue," and the "Committee's Comment" under MAI No. 17.01 directs that "[w]here agency is in issue, see 18.01." In the case at bar, defendant was charged with the duty to use ordinary care under the circumstances not to injure plaintiff by any affirmative act on her part only if plaintiff's status was that of a *discovered* trespasser. That was an essential prerequisite to, and element of, any recovery by plaintiff; and, being in open dispute with different inferences permissible under the evidence, that issue should have been submitted in any verdict directing instruction by requiring a simple finding to the effect that defendant had actual knowledge [see 2 Harper & James, Torts, § 27.6, 1. c. 1465] of plaintiff's position on the rear of the vehicle prior to, and in time to have averted, his injury.

*Of contributory negligence.* In support of her contention that plaintiff was guilty of contributory negligence as a matter of law, defendant cites three cases, to wit, (1) Smith v. Ozark Water Mills Co., 215 Mo. App. 129, 238 S.W. 573, in which an adult *intentionally riding* at night on the running board of an automobile after having rejected an invitation to sit inside was contributorily negligent as a matter of law, (2) Hosford v. Clark, Mo.App., 359 S.W.2d 424, in which the negligence of a girl 14 in *intentionally riding* at night on the right front fender of an automobile was for the jury, and (3) McManus v. Rogers, D.C. D.C., 173 F.Supp. 118, 125(10), reversed and remanded on other grounds 106 U.S. App.D.C. 369, 273 F.2d 104, in which "a

very intelligent boy of seventeen at the time of the accident [who] testified that he knew then that it was very dangerous to *ride* on the back of an automobile" was "negligent as a matter of law" in *intentionally riding* there. In each of those cases, plaintiff *intentionally rode* on the outside of an automobile. In the case at bar, plaintiff intentionally climbed onto the trunk lid of a stationary automobile at the curb, but there was no evidence, and the record by no means compels the inference, that he did so either intending to ride there or anticipating that, while he was in that position, defendant would "floor it" and "take off" without notice or warning to him. See Ward v. Penn Mutual Life Ins. Co., Mo. App., 352 S.W.2d 413, 421.

Plaintiff readily admitted that he knew it was dangerous to *ride* on the outside of a *moving* automobile, but there was no inquiry or testimony concerning *sitting* on a *stationary* vehicle. True, under the circumstances then existing, plaintiff's position on the trunk lid of the DeSoto was pregnant with perilous possibilities. However, as he sat on the stationary vehicle, obviously "something would have to happen other than that which was then happening before injury would befall plaintiff" [McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 503, 251 S.W.2d 704, 706], and the "something" that did happen was *defendant's affirmative action* in "flooring it" and "taking off" without notice or warning.

Of course, a mature adult might well have recognized and appreciated the perilous possibilities inherent in plaintiff's position on the trunk lid under the circumstances then existing. But plaintiff was a youth 16 years of age who had just finished his sophomore year in high school, and the hereinbefore-related course of conduct of the teenagers both inside and outside the DeSoto "was a convincing manifestation as well as a natural product of juvenile immaturity, not of adult maturity." Bridges v. Arkansas-Missouri Power Co., Mo.App., 410 S.W.2d 106, 111.

The authorities leave no room for doubt but that, in resolving the issue as to plaintiff's contributory negligence, we should measure his conduct by the time-honored rule that the care and caution required of a minor, who is of sufficient age to be chargeable with contributory negligence, is that ordinarily exercised by others of the same age, experience and capacity under the same or similar circumstances. Warren v. Kansas City, Mo., 258 S.W.2d 681, 683(3); Hosford v. Clark, supra, 359 S.W. 2d at 427(3), and cases collected in note 3. Furthermore, in actions by minor plaintiffs, it becomes appropriate and necessary to bear in mind that: "Knowledge and appreciation of the danger and risk of injury, actual or imputed, is essential in order that a child may be guilty of contributory negligence. Mere knowledge that injury might result, without appreciation of the risk of injury to which his conduct exposed him, is not sufficient." Turner v. City of Moberly, 224 Mo.App. 683, 685, 26 S.W.2d 997, 998; Wilson v. White, Mo.App., 272 S.W. 2d 1, 6–7(12); Bridges v. Arkansas-Missouri Power Co., supra, 410 S.W.2d at 111(5); United States v. Stoppelmann, 8 Cir., 266 F.2d 13, 19. In holding to this course, courts but recognize that which is common knowledge, i. e., that thoughtless conduct, impulsive action and immature judgment are concomitants of youth, and that, although "[a] boy may have all the knowledge of an adult respecting the dangers which will attend a particular act . . . at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person." Burger v. Missouri Pac. R. Co., 112 Mo. 238, 249, 20 S.W. 439, 441; Holmes v. Missouri Pac. Ry. Co., 190 Mo. 98, 107, 88 S.W. 623, 625; Hosford v. Clark, supra, Mo.App., 359 S.W. 2d at 428.

Since "[t]here is no fixed rule of law by which to gauge, or scale by which to nicely weigh, the acts of a minor to determine if he is guilty of contributory negligence" [Jackson v. Butler, 249 Mo. 342, 369, 155 S.W. 1071, 1079] and since, in each instance, not only the age of the minor but also "the peculiar circumstances of the particular case, the knowledge and experience of the child in reference to those circumstances, and his capacity to appreciate the danger" must be taken into consideration [Moeller v. United Rys. Co., 242 Mo. 721, 729, 147 S.W. 1009, 1012(6)], whether a minor plaintiff has been guilty of contributory negligence, i. e., whether he both knew and appreciated the danger and the risk of injury, is usually for the triers of the facts. For that matter, judicial declaration that *any* plaintiff has been contributorily negligent as a matter of law is permissible and proper only where it may be said upon the whole evidence and all inferences deducible therefrom, when viewed in the light most favorable to him, that the only reasonable conclusion is that he was guilty of negligence proximately causing his injury. Combellick v. Rooks, Mo. (banc), 401 S.W.2d 460, 462(1); Bennett v. Kitchin, Mo., 400 S.W.2d 97, 101; Dye v. Geier, Mo., 345 S.W.2d 83, 87(3); Cupp v. Montgomery, Mo.App., 408 S.W.2d 353, 359(4); Anderson v. Welty, Mo.App., 334 S.W.2d 132, 138(9). Believing that, in the circumstances of the case at bar, reasonable minds might well disagree as to whether plaintiff comprehended the potential danger and appreciated the possible risk of injury inherent in his conduct, we are constrained to conclude that the issue of contributory negligence was for the jury. White v. Burkeybile, supra, 386 S.W.2d at 424; Losh v. Ozark Border Elec. Coop., Mo., 330 S.W. 2d 847, 851(4); Eilers v. Union Electric Co., Mo.App., 386 S.W.2d 427, 432(10); Hosford v. Clark, supra.

*Of assumption of risk.* Under this point, instant defendant quotes the statement that "[g]enerally, there are three essential elements of the defense of assumption of risk which must be established by defendant in order to render the defense available: (1) The existence of a risk to

plaintiff; (2) *knowledge of the risk by plaintiff, and his appreciation of the danger*; and (3) plaintiff's voluntary assumption of this risk or his exposure to it." 1 Blashfield Automobile Law and Practice (3rd Ed.) § 64.2, p. 538. For the purposes of this opinion, it will suffice for us to accept the quoted statement without compounding "the confusion surrounding the doctrine of assumption of risk, or of 'incurred risk,' by attempting to wade through the various distinctions and definitions or by considering whether or not (except perhaps for risks expressly assumed) there is any further need in the law of Missouri for [this] doctrine." Bullock v. Benjamin Moore & Co., Mo.App., 392 S.W.2d 10, 13. Furthermore, it is not decisive here that, as defendant's counsel emphasize, "[a]ssumption of risk does not always go out of the case where the issue is one of negligence and contributory negligence" and that the doctrine is not "invariably limited to cases arising out of a contractual relationship or master and servant cases [but] may extend to other cases in which the defense is based upon the principle expressed by the maxim volenti non fit injuria" [Terry v. Boss Hotels, Inc., Mo., 376 S.W.2d 239, 247 (16, 17)] i. e., meaning that to which a person assents is not esteemed in law an injury. Arnold v. May Department Stores Co., 337 Mo. 727, 737, 85 S.W.2d 748, 754; 38 Am. Jur. Negligence § 171, p. 845; 92 C.J.S. 1027.

The controlling consideration here is that, as all of the authorities agree, knowledge of the risk or danger and an appreciation thereof are essential elements of assumption of risk. Terry v. Boss Hotels, Inc., supra, 376 S.W.2d at 248(18); Fletcher v. Kemp, Mo., 327 S.W.2d 178, 183(6), 186(15); Bullock v. Benjamin Moore & Co., supra, 392 S.W.2d at 13(1); Hathaway v. Evans, Mo.App., 235 S.W.2d 407, 411(6); 65A C.J.S. Negligence § 174(3), p. 294; 38 Am.Jur. Negligence § 173, p. 847; Restatement, Second, Torts § 496D, p. 574; annotation 82 A.L.R.2d 1218, §§ 5–9. And "[i]f by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk . . . ." Restatement, Second, Torts § 496D, comment c, 1. c. 575. To the same effect, see Prosser on Torts (2nd Ed.), § 55, 1. c. 309; 1 Blashfield Automobile Law and Practice (3rd Ed.), § 64.3, p. 539. What we have heretofore said in our discussion of the issue of contributory negligence concerning instant plaintiff's comprehension of the potential danger and appreciation of the possible risk of injury inherent in his conduct, is equally relevant here. We are unable to conclude that, when plaintiff climbed onto the trunk lid of the stationary DeSoto, he assumed, as a matter of law, the risk of injury subsequently resulting from defendant's affirmative act in "flooring it" and "taking off" without notice or warning to him. Defendant's cited case of Frailey v. Kurn, 349 Mo. 434, 161 S.W.2d 424, 426(3), where plaintiff, who had boarded a moving freight train for the purpose of riding it and had sustained severe personal injuries when he admittedly jumped therefrom, was said to have "assumed the risks arising from the usual and ordinary operation of the train," finds no application on the facts of the instant record.

The order granting a new trial is affirmed and the cause is remanded.

HOGAN and TITUS, JJ., concur.